Jason GEORGE, Respondent,

v.

Daniel EVENSON, et al., Defendants,

Auto–Owners Insurance Company, Appellant,

Progressive Insurance Company, Respondent.

No. A06–2133.

Supreme Court of Minnesota.

July 31, 2008.

James Reding, Jr., Reding & Pilney, Lake Elmo, MN, for appellant.

Warren V. Bigelow, Jr., Wayzata, MN, for respondents.

Lori Lou Barton, Woodbury, MN, for amicus curiae.

## OPINION

ANDERSON, G. BARRY, Justice.

We are called upon to decide whether the unorthodox arbitration proceeding in this motor vehicle accident dispute was the functional equivalent of (1) a tort action pursued to a conclusion in a district court action, in which case the underinsurer was entitled to notice pursuant to *Malmin v. Minnesota Mutual Fire & Casualty Co.*, 552 N.W.2d 723 (Minn.1996); or (2) an effort to arrive at a settlement agreement between the injured claimant and the tort-

feasors, in which case the underinsurer was entitled to notice of the proposed settlement and an opportunity to substitute payment to the claimant pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), *superseded by statute on other grounds*, Minn.Stat. § 65B.49, subd. 4a (2006), *as recognized in Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 603 (Minn.2001). Because what occurred here is more accurately characterized as an arbitration proceeding aimed at arriving at a settlement amount and because the arbitration agreement did not purport to bind the underinsurer, we affirm the court of appeals.

On May 31, 1999, respondent Jason George saw defendant Melissa DesMarais, his former girlfriend and the mother of his child, leave a movie theater in Buffalo with defendant Daniel Evenson. After arguing with George in a nearby parking lot, DesMarais and Evenson entered DesMarais's vehicle with Evenson driving. The district court found that George "positioned himself in front of the vehicle" and that Evenson backed up the vehicle and then drove forward, striking George.

DesMarais, who owned the vehicle that struck George, had automobile liability coverage in the amount of $100,000 per person with Farm Bureau Insurance Company. Evenson, who was driving the vehicle when it struck George, had excess liability coverage in the amount of $30,000 with respondent Progressive Insurance Company. George had underinsured motorist coverage in the amount of $50,000 per person under his father's policy with appellant Auto–Owners Insurance Company.

On July 22, 1999, George's counsel notified Auto–Owners of George's underinsured motorist claim, explaining that George's damages were significant and would exhaust the $100,000 limit on DesMarais's Farm Bureau policy. In September 2003, Auto–Owners informed George's counsel that George was ineligible for underinsured motorist benefits because George's claim fell under the intentional-acts exclusion in its policy.

On April 14, 2005, George's counsel faxed letters to Auto–Owners and Progressive. In the letters, George's counsel explained that Farm Bureau had agreed to submit the case to binding high/low arbitration, which was scheduled for April 29, 2005, and he invited Auto–Owners and Progressive to participate. The letters, characterized as both *Malmin* and *Schmidt* notices, stated that notice was provided "because, in the event of a favorable award in excess of Farm Bureau's liability insurance limits," a claim for underinsured motorist and No–Fault benefits "will be presented to you for payment up to your policy limits." Progressive acknowledged receipt of the April 14 letter and refused to participate in the arbitration. Auto–Owners, on the other hand, denies receiving the letter.[1]

On Friday, April 29, 2005, George's counsel faxed Auto–Owners a letter in which he stated that the arbitration was rescheduled for May 4 and that *Malmin* and *Schmidt* notices had been served upon Auto–Owners on April 14. George's counsel again invited Auto–Owners to participate in the arbitration. On May 3, 2005, Auto–Owners's counsel informed George's counsel that Auto–Owners had first re-

---

1. George's counsel provided the district court a confirmation that the letter was faxed to Auto–Owners on April 14. The district court found that "[i]t appears most likely that almost identical letters were sent to Auto–Own-

ers and to Progressive on April 14" and that "[b]ecause the April 14 letter to Progressive was received, there is reason to believe that [the letter from George's counsel] to Auto–Owners was also sent."

ceived notice of the arbitration via the April 29 rescheduling notice, which Auto–Owners's claims representative did not personally receive until Monday, May 2. Auto–Owners's counsel explained that Auto–Owners did not receive the April 14 notice "until 2:06 p.m. today when you faxed [it] to [the claims representative]." Auto–Owners's counsel objected to the arbitration on the grounds of untimely notice and George's failure to obtain Auto–Owners's consent to arbitration. Specifically, Auto–Owners's counsel alleged that "Auto–Owners is not able to evaluate this matter and would be prejudiced under the short notice you have provided." Later that day, George's counsel notified Auto–Owners's counsel that George intended to proceed with the arbitration and "to bind Auto–Owners with the result."

The arbitration agreement executed by George, Evenson, DesMarais, and Farm Bureau (the liability insurer for DesMarias) provided that George could recover a minimum of $15,000 and a maximum of $100,000 in damages from Farm Bureau. The agreement also stated that Farm Bureau's payment of the arbitration award would release it from all obligations under its policy and that the remaining balance on George's claims could be satisfied only by Auto–Owners, Progressive, or other insurers. The arbitrator found George 45% at fault and Evenson 55% at fault, with total damages of $535,159.82. George's recovery after fault apportionment was $294,337.90, which exceeded Farm Bureau's $100,000 policy limit by $194,337.90.

On May 13, 2005, George's counsel sent Auto–Owners a letter, labeled as a *Schmidt* notice, in which he notified Auto–Owners of the arbitration award and stated that George intended to accept the arbitration award unless Auto–Owners substituted its draft. Auto–Owners informed George's counsel on May 19 that it

did not wish to substitute its draft, and Farm Bureau paid George $100,000.

George then brought an action against Auto–Owners, Progressive, Evenson, and DesMarais. Progressive moved to dismiss George's claims against it under Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, and Auto–Owners moved for summary judgment. George moved to confirm the arbitration award, for default judgment against Evenson and DesMarais, and for declaratory judgment that he was entitled to excess damages up to the limits of the Auto–Owners and Progressive policies.

The district court dismissed with prejudice George's complaint against Progressive and granted Auto–Owners's motion for summary judgment. In granting summary judgment in favor of Auto–Owners, the district court concluded that "Auto–Owners should prevail due to [George's] failure to provide a proper and timely *Malmin* notice" and that George "failed to overcome the presumption that Auto–Owners was prejudiced by [his] failure to provide proper notice." The district court stated that George's purported *Schmidt* notice was "of no effect" because "[t]his case didn't involve a 'settlement.'" The district court also (1) denied George's motion to confirm the arbitration award as to Auto–Owners and Progressive because the insurers were not parties to the arbitration and did not receive timely *Malmin* notices; (2) denied George's motion for default judgment against Evenson and DesMarais, reasoning that "entry of [j]udgment would serve no purpose" because Evenson and DesMarais had been released from personal liability and because the arbitration award was not binding on Auto–Owners and Progressive; and (3) denied George's motion for declaratory judgment against Auto–Owners and Progressive. In an amended order for judgment, the district

court ordered the dismissal of all claims against Evenson and DesMarais.

The district court granted George's request for reconsideration on the basis of evidence that Evenson had additional liability coverage with Austin Mutual Insurance Company. In its second amended order for judgment, the district court (1) granted George's motion for default judgment against Evenson and DesMarais in the amount of $194,333.90 but stated that the judgment could only be executed against insurers other than Auto–Owners and Progressive, and (2) granted George's motion to confirm the arbitration award except as to Auto–Owners and Progressive.

George appealed from the district court's orders. The court of appeals affirmed the district court's dismissal of George's claim against Progressive but reversed the district court's grant of Auto–Owners's motion for summary judgment and its denial of George's motion to confirm the arbitration award. *George v. Evenson,* No. A06–2133, 2007 WL 4303518, at *1 (Minn.App. Dec. 11, 2007). In reversing the district court's grant of summary judgment to Auto–Owners, the court of appeals concluded that the arbitration award should be construed as a settlement subject to the *Schmidt* notice requirements rather than the conclusion of a tort claim subject to the *Malmin* notice requirements. *Id.* at *8. The court of appeals went on to hold "that because [George's] *Schmidt* notice to Auto–Owners met the applicable requirements, his [underinsured motorist] claim against Auto–Owners is not barred." *Id.* at *9. In reversing the district court's denial of George's motion to confirm the arbitration award, the court of appeals reasoned that although George "had no right to confirm his arbitration award as against Auto–Owners, which was not party to the arbitration," Minn.Stat. § 572.18 (2006) required confirmation of the award "against DesMarais and Farm Bureau, the named respondents in the arbitration."[2] *Evenson,* 2007 WL 4303518, at *9. The court of appeals ordered the district court to confirm George's arbitration award on remand.[3] *Id.* at *10. We granted Auto–Owners's petition for review.

I.

Summary judgment is proper where there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from a district courts grant of summary judgment, we view "the evidence in the light most favorable to the party against whom summary judgment was granted." *State Farm Fire Cas. v. Aquila Inc.,* 718 N.W.2d 879, 883 (Minn.2006). "[S]o long as an insurance contract does not omit statutorily mandated coverage or otherwise contravene the applicable statutes, the contract governs the insurer's liability." *Kwong v. Depositors Ins. Co.,* 627 N.W.2d 52, 55 (Minn. 2001).

The Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2006), requires insurers to include underinsured motorist coverage in automobile insurance policies in the minimum

---

**2.** Minnesota Statutes § 572.18 provides that "[u]pon application of a party, the court shall confirm an award" absent circumstances not present in this case.

**3.** The court of appeals failed to recognize that the district court had granted George's motion to confirm the arbitration award except as to Auto–Owners and Progressive in its second amended order for judgment. Because the district court has already confirmed the arbitration award, it is not required to do so again on remand.

amount "of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident." Minn.Stat. § 65B.49, subd. 3a(1). The No–Fault Act also requires owners of motor vehicles to maintain underinsured motorist coverage. *Id.*, subd. 3a(2). "With respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle." *Id.*, subd. 4a. "Underinsured coverage * * * is intended to protect against * * * the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance * * *." *Meyer v. Ill. Farmers Ins. Group*, 371 N.W.2d 535, 537 (Minn. 1985).

## II.

The first, and narrow, issue before us is whether the arbitration award in this case constituted the conclusion of a tort claim subject to the *Malmin* notice requirements or a settlement subject to the *Schmidt* notice requirements. Auto–Owners argues that the arbitration award in this case constituted the conclusion of a tort claim and that *Malmin* sets forth the governing standard. The district court agreed with Auto–Owners, noting that "[t]he present case looks like a tort action." The court of appeals, on the other hand, agreed with George's contention that the arbitration award constituted a settlement subject to the *Schmidt* notice requirements. *Evenson*, 2007 WL 4303518, at *8.

■ In *Employers Mutual Cos. v. Nordstrom*, we explained that "[u]nderinsured coverage has generally been understood as excess coverage, to be utilized only after the cause of action against the

insured tortfeasor has been concluded." 495 N.W.2d 855, 856 (Minn.1993). In other words, recovery from the tortfeasor's liability insurance is a "condition precedent" to bringing an underinsured claim. *Id.* at 857. In *Nordstrom*, we recognized two means by which this condition precedent can be satisfied:

> [T]he injured claimant can either (1) pursue a tort claim to a conclusion in a district court action, and then, if the judgment exceeds the liability limits, pursue underinsured benefits; or (2) settle the tort claim for "the best settlement," give a *Schmidt–Clothier* notice to the underinsurer, and then maintain a claim for underinsured benefits.

*Id.*

■ The first means by which an injured claimant can resolve the underlying liability claim against the tortfeasor is to "pursue a tort claim to a conclusion in a district court action, and then, if the judgment exceeds the liability limits, pursue underinsured benefits." *Id.* In *Malmin* we observed that "procedural due process principles require notice and an opportunity to be heard before a party can be deprived of rights or possessions." 552 N.W.2d at 728 n. 4. We noted that "a provision within an insurance contract which requires the insured to notify his or her insurer of the commencement of a lawsuit against a tortfeasor within a limited period of time (*i.e.*, 60 days) after service of process comports with due process principles." *Id.* "Such a provision would permit the insurer to consider the nature of the tort claim and the tortfeasor's liability limits, and thereby determine whether to attempt to intervene in the litigation in order to protect its own financial interests." *Id.*

■ The second means by which an injured claimant can resolve the underlying

liability claim against the tortfeasor is to "settle the tort claim for 'the best settlement,' give a *Schmidt–Clothier* notice to the underinsurer, and then maintain a claim for underinsured benefits." *Nordstrom*, 495 N.W.2d at 857. In *Schmidt v. Clothier*, we explained that when an underinsurer pays benefits to its insured and gives the tortfeasor notice of the payment, "a subsequent release obtained by the tortfeasor will not defeat the [underinsurer's] subrogation right" against the tortfeasor. 338 N.W.2d at 262. In this scenario, the underinsurer can "substitute its payment to the insured in an amount equal to the tentative settlement" and then, as subrogee, maintain the insured's tort action against the tortfeasor. *Id.* at 263. "If the tortfeasor is released before payment by the insurer, however, no subrogation rights ever arise." *Id.* at 262. Because the underinsurer has a "subrogation right against the tortfeasor only if it has paid underinsurance benefits prior to release of the tortfeasor * * *, the underinsurer is entitled to notice of the tentative settlement and an opportunity to protect those potential rights by paying underinsurance benefits before release." *Id.* at 263. We held in *Schmidt* that an underinsurer should be given 30 days' advance written notice of a tentative settlement agreement. *Id.*

We interpret an arbitration agreement "to give effect to the intention of the parties as expressed in the language they used in drafting the whole [agreement]." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). We agree with the court of appeals that the parties to the arbitration agreement at issue here intended the arbitration to be characterized as a settlement subject to the *Schmidt* notice requirements. *Evenson*, 2007 WL 4303518, at *7. The agreement states that "DesMarais, Evenson and Farm Bureau have * * * agreed to binding, high/low arbitration, subject to *Schmidt v. Clothier* notice." Furthermore, the agreement states that "George may provide *Schmidt v. Clothier* and other applicable notices to Auto Owners, Progressive and other insurers and proceed as if the payment due by Farm Bureau *is tantamount to a settlement offer.*" (Emphasis added.) Finally, the agreement provides that "nothing in this document shall affect George's rights against Auto Owners or Progressive" and that the parties intend to preserve George's rights against Auto–Owners, Progressive, and other insurers "without res judicata or estoppel effects."

We also note that on May 13, 2005, George provided Auto–Owners an unequivocal *Schmidt* notice, a notice responded to by Auto–Owners. Although the court of appeals was correct in its observation "that much of [George's] conduct during the course of the arbitration and subsequent litigation is contradictory to the express language of his own agreement," *id.* at *7 n. 4, the May 13 letter, which was labeled as a *Schmidt* notice, was the last and most unequivocal notice that George provided Auto–Owners. Finally, George concedes that Auto–Owners is not bound by the arbitrator's assessment of fault and damages and is free to relitigate those issues.

Notwithstanding inconsistent positions taken by George's counsel at various times, the arbitration in this case was simply a means of establishing the value of George's claim for purposes of the Auto–Owners/George settlement. Because the parties to the arbitration intended the arbitration award to be characterized as a settlement governed by *Schmidt v. Clothier* and because the last notice George provided Auto–Owners was a *Schmidt* notice, we hold that the arbitration award in this case constituted a settlement subject to the *Schmidt* notice requirements.

## III.

Having determined that the arbitration award in this case constituted a settlement subject to the *Schmidt* notice requirements, we next consider whether George's notice to Auto–Owners satisfied those requirements. The district court granted Auto–Owners's motion for summary judgment on the grounds that George "fail[ed] to provide a proper and timely *Malmin* notice" and "failed to overcome the presumption that Auto–Owners was prejudiced by [his] failure to provide proper notice." The court of appeals reversed, concluding that George's notice satisfied the *Schmidt* standard. *Evenson,* 2007 WL 4303518, at *9.

In *American Family Mutual Insurance Co. v. Baumann,* we outlined the requirements for a valid *Schmidt* notice as follows:

> Henceforth, the notice required of the insured shall be 30 days' written notice of a settlement agreement which is contingent upon the decision of the injured complainants' underinsurer whether to preserve its potential right of subrogation either by paying underinsured motorist benefits or by substituting its draft for that of the tortfeasor's liability insurer. The notice shall identify the insured, the tortfeasor and the tortfeasor's insurer and shall disclose the limits of the tortfeasor's automobile liability insurance and the agreed upon amount of the settlement.

459 N.W.2d 923, 927 (Minn.1990).

■ We conclude that the letter that George's counsel sent to Auto–Owners on May 13 satisfied the notice requirements that we set forth in *Schmidt* and clarified in *Baumann.* The letter stated that "[p]ursuant to *Schmidt v. Clothier,* Mr. George intends to accept said Arbitration Award in the event Auto–Owners does not substitute its draft." The letter also iden-

tified George as the insured, Evenson as the tortfeasor, Progressive as Evenson's excess liability insurer, the limits of Evenson's coverage, and the amount of the arbitration award. Finally, Auto–Owners cut short the 30–day notice requirement by informing George's counsel on May 19 that it did not wish to substitute its draft.

We reject Auto–Owners's argument that the May 13 letter did not satisfy the *Schmidt* notice requirements because the letter failed to specify that a settlement had been reached. The May 13 letter, which was labeled as a *Schmidt* notice and invited Auto–Owners to substitute its draft, met the *Schmidt* standard and gave Auto–Owners sufficient notice of its option to substitute its draft for the arbitration award. We hold, therefore, that the May 13 letter was a valid *Schmidt* notice and that the district court erred in granting summary judgment to Auto–Owners.

Because the arbitration award in this case constituted a settlement subject to the *Schmidt* notice requirements and George provided a valid *Schmidt* notice to Auto–Owners, we affirm the decision of the court of appeals reversing the district court's grant of summary judgment to Auto–Owners.

Affirmed.

DIETZEN, J., took no part in the consideration or decision of this case.