Bakita ISAAC, Respondent,

v.

VY THANH HO, et al.,
Appellants/Cross–
Respondents,

Auto Club Insurance Association,
intervenor, Respondent/Cross–
Appellant.

No. A11–0011.

Supreme Court of Minnesota.

Jan. 23, 2013.

Jason R. Vohnoutka, Vohnoutka Law Office, Ltd., Minneapolis, MN, for respondent.

Paul J. Rocheford, Paul E.D. Darsow, J. Kevin Kirchner, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for appellants/cross-respondents.

John R. Crawford, Benjamin A. Johnson, Johnson & Lindberg, P.A., Minneapolis, MN, for respondent/cross-appellant.

## OPINION

DIETZEN, Justice.

This case presents the question of whether an injured party may continue to pursue a negligence claim against a tortfeasor when the injured party notifies her underinsured motorist (UIM) carrier of a settlement offer from the tortfeasor and the UIM carrier elects to substitute its check for that of the tortfeasor pursuant to *Schmidt v. Clothier (Schmidt–Clothier),* 338 N.W.2d 256 (Minn.1983). Respondent Bakita Isaac sued appellants Vy Thanh Ho and Lien Ho for negligence and resulting injuries sustained in a car accident. The parties entered into a tentative settlement, subject to Isaac giving her UIM carrier notice under *Schmidt–Clothier* to preserve her potential UIM claim. The UIM carrier elected to substitute its check for the tortfeasor's check, and Isaac accepted the substitute check and cashed it. The negligence claim proceeded to trial, and a jury found the Hos negligent and awarded damages. The district court denied the Hos' post-trial motion for judgment as a matter of law (JMOL), rejecting their argument that Isaac had settled her negligence claim against them, and entered judgment in favor of Isaac and the UIM carrier. The court of appeals affirmed the judgment for Isaac, but reversed the judgment for the UIM carrier. We conclude that an injured party may not continue to pursue a negligence claim against the tortfeasor after she has agreed to settle the negligence action under the *Schmidt–Clothier* procedure and has accepted the substituted check from the UIM carrier. We affirm the court of appeals' reversal of the judgment in favor of the UIM carrier, but reverse the decision affirming the judgment for Isaac.

The material facts are undisputed. Bakita Isaac sued the at-fault driver Vy Thanh Ho and car owner Lien Ho for negligence arising out of a car accident. Isaac was insured by respondent/cross-appellant Auto Club Insurance Association (Auto Club), and the Hos held a $50,000 liability policy with Progressive Preferred Insurance Company (Progressive).

During the litigation, the parties attempted to settle the negligence claim. In July 2009, Isaac served the Hos with an offer of judgment under Minn. R. Civ. P. 68, which stated that the offer was contingent on Isaac giving her UIM carrier, Auto Club, the opportunity to exercise its right "to stop the settlement" by substituting its check pursuant to *Schmidt–Clothier.* The Hos counteroffered under Rule 68, but excluded the language making the settlement contingent on the UIM carrier's decision not to substitute. Isaac responded with a second offer of judgment with the same substitution language as her first offer. Thereafter, a claims adjuster for Progressive contacted Isaac's attorney and stated that Progressive would be willing to offer an additional $2,000 to its previous Rule 68 counteroffer to settle the case. Isaac's attorney responded that if Progressive would be willing to "split the difference," he would "recommend" the settlement. The Hos' attorney sent a letter to Isaac's attorney enclosing a stipulation of dismissal and Progressive's check for $10,665, but directed that the draft not be negotiated "until the signed Release has been returned."

Subsequently, Isaac's attorney faxed a letter to Auto Club, stating that Isaac had received an offer to settle the negligence claim and that pursuant to *Schmidt–Clothier,* Auto Club had "thirty (30) days in which to either acquiesce in that settle-

ment and lose your right to subrogation or to prevent such settlement by exchanging your draft for that of Progressive Insurance Company in the amount of the proposed settlement." Additionally, the letter stated that if Auto Club did not "intend to substitute its draft," Auto Club should notify Isaac's attorney immediately so that Isaac and her attorney could "finalize the settlement with Progressive without further delay." Further, the letter stated that Isaac intended to pursue a UIM claim against Auto Club.

Auto Club timely substituted its check for $10,665 and intervened in the negligence action. Isaac cashed Auto Club's check and returned Progressive's uncashed check and the unsigned release to the Hos. The Hos then moved for summary judgment in the negligence action, arguing that they had settled Isaac's negligence claim and therefore the court must dismiss the claim. The district court denied summary judgment based on the language of the settlement agreement. According to the court, "the parties explicitly conditioned their settlement agreement on the waiver of Auto Club's subrogation rights, and thereby voluntarily granted Auto Club the power to terminate the tentative settlement." Therefore, the court concluded that Auto Club's substitution terminated "the tentative settlement agreement."

Following a trial, the jury returned a special verdict, finding the Hos 95 percent at fault and Isaac 5 percent at fault for the accident. The jury awarded gross damages to Isaac totaling $58,739. The district court denied the Hos' post-trial motion for JMOL, concluding that because the parties had contracted "outside the scope of *Schmidt*," the settlement was terminated when Auto Club substituted its check and Isaac was free to pursue her negligence claim against the Hos. The

court, however, offset Isaac's recovery by $14,555 for collateral sources. After determining costs and disbursements, the court entered judgment in favor of Isaac in the amount of $45,765 and judgment in favor of Auto Club in the amount of $11,152—the amount of its substituted draft plus prejudgment interest.

The court of appeals affirmed the judgment in favor of Isaac and reversed the judgment in favor of Auto Club. *Isaac v. Ho,* No. A11–11, 2011 WL 3426156 (Minn. App. Aug. 8, 2011). The court concluded that Auto Club's substitution payment did not require Isaac to dismiss her negligence claim against the Hos, reasoning that the parties had not reached a full and final settlement agreement. *Id.* at *3. Instead, the court concluded that the settlement agreement was contingent upon Auto Club's approval, and Auto Club's substitution prevented the settlement from becoming final. *Id.* at *5. Additionally, the court of appeals concluded the district court erred in allowing Auto Club to recoup the *Schmidt–Clothier* substitution amount paid to Isaac, reasoning that Auto Club's payment of $10,665 was a voluntary payment for which Auto Club had no right of subrogation because the Hos were not underinsured and Auto Club's right of subrogation never "matured." *Id.* at *5–6.

## I.

The Hos argue that the district court erred in denying their motion for judgment as a matter of law. They contend that when Isaac gave notice of the settlement to Auto Club under *Schmidt–Clothier* and Auto Club elected to substitute its check, the legal effect was to settle Isaac's negligence claim against the Hos, but preserve her UIM claim against Auto Club and the subrogation rights of Auto Club. *See Schmidt–Clothier,* 338 N.W.2d at 262–63. Isaac and Auto Club counter that the

notice of settlement and substitution of checks under *Schmidt–Clothier* did not affect Isaac's right to pursue a negligence claim against the Hos because the substitution prevented the settlement from taking effect, and therefore the negligence claim survived. Additionally, Auto Club argues that the court of appeals erred in concluding that it was barred as a matter of law from recovering its substitution payment of $10,665 plus interest from the Hos.

█ Minnesota Rule of Civil Procedure 50.02 provides that "a party may make or renew a request for judgment as a matter of law by serving a motion within the time specified in Rule 59." If a verdict was returned, the court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Minn. R. Civ. P. 50.02(a). The denial of a motion for judgment as a matter of law presents a question of law that we review de novo. *Bahr v. Boise Cascade Corp.,* 766 N.W.2d 910, 919 (Minn.2009).

█ To determine whether the district court erred in denying the motion for JMOL, we examine the nature of a UIM claim and our decision in *Schmidt–Clothier.* A UIM claim is premised on a showing that the vehicle causing the injury is underinsured. *See* Minn.Stat. § 65B.43, subd. 17 (2012). Under the statute, a vehicle is underinsured if the limit for bodily injury of the applicable liability policy "is less than the amount needed to compensate the insured for actual damages." *Id.* Generally, an injured claimant may pursue a UIM claim only after adjudicating or settling an action against the tortfeasor. *Oganov v. Am. Family Ins. Grp.,* 767 N.W.2d 21, 26 (Minn.2009).

In *Schmidt–Clothier,* we considered, among other issues, the effect of an injured party's settlement with the tortfeasor on the injured party's right to recover UIM benefits. 338 N.W.2d at 261–63. The UIM carrier argued that a settlement by the insured with the tortfeasor without the consent of the UIM carrier destroyed the potential subrogation rights of the UIM carrier, and therefore precluded recovery by the insured of UIM benefits. *Id.* at 261. We concluded that the settlement and release of an underinsured tortfeasor does not prevent the injured party from recovering UIM benefits, provided that the subrogation rights of the UIM carrier are protected. *Id.* at 262. Specifically, we concluded that the UIM carrier is entitled to 30 days' written notice of the insured's "tentative settlement" with the tortfeasor, which gives the UIM carrier an opportunity to protect its potential right of subrogation by paying UIM benefits before the release of the tortfeasor. *Id.* at 262–63. If the UIM carrier concludes that a subrogation claim against the tortfeasor is worth pursuing, the UIM carrier can preserve the claim by substituting its check payable to the injured party for the check of the tortfeasor's insurer. *Id.* at 263. This payment protects the potential subrogation right of the UIM carrier "to the extent of the payment." *Id.* Alternatively, if the UIM carrier believes that recovery of the subrogation claim is unlikely, the UIM carrier can let the notice period expire and permit the settlement between the insured and tortfeasor to be finalized. *Id.* Thereafter, the injured claimant may assert a UIM claim, but the UIM carrier could not recover any payments made on the UIM claim through subrogation. *Id.*

█ In subsequent cases, we refined and clarified the *Schmidt–Clothier* procedure. For example, we have described two ways in which an injured claimant may proceed against a tortfeasor. Specifically, an injured claimant may pursue a tort claim to conclusion in district court, and then, if the judgment exceeds the liability

limits of the tortfeasor's policy, pursue UIM benefits. *See Emp'rs Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 857 (Minn. 1993). Alternatively, the injured claimant may settle the tort action for the "best settlement" the claimant can obtain from the tortfeasor, give a *Schmidt–Clothier* notice to the UIM carrier, and then pursue a claim for UIM benefits from the claimant's insurer. *See id.* The "best settlement" under *Schmidt–Clothier* is the amount the injured party agrees to accept and is not subject to challenge by the UIM carrier. *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 607 (Minn.2001).

■ When giving a *Schmidt–Clothier* notice to her UIM carrier, the injured claimant preserves her right to recover UIM benefits. 338 N.W.2d at 262. The UIM carrier's receipt of the notice bars it from claiming prejudice on the basis that its potential subrogation rights have not been protected. *Id.* at 263. Conversely, an injured claimant's failure to provide proper notice creates a rebuttable presumption that the claimant has prejudiced the UIM carrier's subrogation right and therefore forfeited any entitlement to UIM benefits. *Am. Family Mut. Ins. Co. v. Baumann*, 459 N.W.2d 923, 927 (Minn. 1990).

With these principles in mind, we now turn directly to the two questions before us, which are: (1) whether an injured party may continue to pursue a negligence action after reaching a settlement with the tortfeasor, giving a *Schmidt–Clothier* notice to the UIM carrier, and receiving and cashing the substituted check from the UIM carrier; and (2) whether Isaac elected to settle the case under the *Schmidt–Clothier* procedure.

### A.

■ Isaac and Auto Club rely on language from previous cases to argue that Isaac's settlement with the Hos was only "tentative" and that Auto Club's substitution payment prevented the settlement from taking effect. *See, e.g., Schmidt–Clothier*, 338 N.W.2d at 263 (stating that "the underinsurer is entitled to notice of the tentative settlement" between the insured and the tortfeasor in order to protect the potential right of subrogation); *Gusk v. Farm Bureau Mut. Ins. Co.*, 559 N.W.2d 421, 424 (Minn.1997) (stating that "*Schmidt v. Clothier* substitutions, by their very nature, prevent settlements between insureds and tortfeasors"). According to Isaac and Auto Club, after receiving the substitution payment from Auto Club, Isaac had the right not only to pursue her UIM claim against Auto Club, but also to pursue her negligence claim against the Hos for additional damages.

Isaac and Auto Club misconstrue our case law. We have described a settlement under the *Schmidt–Clothier* procedure as "tentative," but only in the sense that the injured claimant must give her UIM carrier the opportunity to substitute its payment in order to protect its potential right of subrogation. *Baumann*, 459 N.W.2d at 925. We also have observed that "[t]echnically, no settlement is reached when the UIM carrier follows the *Schmidt–Clothier* procedure and substitutes its draft for that of the tortfeasor's insurance company." *Washington v. Milbank Ins. Co.*, 562 N.W.2d 801, 806 n. 3 (Minn.1997). A settlement does not exist within traditional contract principles because the injured party and the tortfeasor do not complete the settlement. Nonetheless, directly addressing the question presented here, we explained in *Washington* that "the UIM carrier's substitution operates as the equivalent of a settlement between the party claiming damages and the tortfeasor because the tortfeasor is released from further liability to the party claiming dam-

ages," while the UIM carrier "retains a subrogation right against the tortfeasor's insurance company." *Id.*

 The settlement and substitution process we adopted in *Schmidt–Clothier* is an artificial construct designed to not only facilitate the settlement of tort claims that involve a potential UIM claim, but also to provide a roadmap for doing so. *See Gusk,* 559 N.W.2d at 424–25. Specifically, by giving notice to the UIM carrier, the injured party preserves her right to pursue a UIM claim, and by substituting its check for that of the tortfeasor, the UIM carrier preserves its potential subrogation claim against the ·tortfeasor. *Schmidt– Clothier,* 338 N.W.2d at 262–63. The substitution process "was not intended to deprive [the parties] of the benefit of their tentative settlement bargain." *Gusk,* 559 N.W.2d at 424. In this case, Isaac received the benefit of her agreement: she recovered the settlement she negotiated with the tortfeasor from her UIM carrier and preserved her UIM claim. Allowing Isaac to continue to pursue her tort claim after agreeing to settle the claim and receiving the $10,665 settlement amount from her UIM carrier is inconsistent with our policy of promoting settlement in this type of situation. *See Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 407 n. 3 (Minn. 2000) (explaining that the *Schmidt–Clothier* process protects "the UIM claimant's ability to settle with the tortfeasor"). Further, accepting Isaac's position would give an injured claimant little incentive to pursue the best possible settlement with the tortfeasor if she could continue to pursue both the tort claim and a UIM claim after agreeing to a settlement amount with the tortfeasor.

 We conclude that when an injured party elects to take the best settlement option to resolve her tort claim and then accepts the substitution payment from her UIM carrier, the injured party limits her recovery to the best settlement amount plus any additional UIM benefits that she can recover from the UIM carrier. The substitution of checks by the UIM carrier operates as settlement between the injured party and the tortfeasor, and therefore the tortfeasor is released from any further liability to the injured party. *Washington,* 562 N.W.2d at 806 n. 3. Consequently, the injured party may not continue to pursue a negligence claim against the tortfeasor and seek additional damages from the tortfeasor. Only the UIM carrier retains a potential claim against the tortfeasor—a subrogation claim—to recover any amounts paid to the injured party to resolve the UIM claim. *See Nordstrom,* 495 N.W.2d at 856 (stating that after resolving the injured party's UIM claim, the UIM carrier may bring a subrogation claim against the tortfeasor to recover "all or a portion of the sums the underinsurer had paid").

### B.

 We next address whether Isaac and the Hos contracted outside the scope of *Schmidt–Clothier* when they agreed to settle the negligence claim. Isaac argues, and the district court agreed, that Isaac's letter giving notice of the tentative settlement to Auto Club demonstrated an intent to settle outside the *Schmidt–Clothier* procedure. Specifically, the letter states, among other things, that pursuant to *Schmidt–Clothier,* Auto Club had 30 days to either "acquiesce in that settlement and lose [its] right of subrogation or to prevent such settlement by exchanging [its] draft for that of Progressive Insurance Company in the amount of the proposed settlement." According to Isaac, the phrase "to prevent such settlement" signals a clear intent to settle outside the *Schmidt–Clothier* procedure. Isaac also argues that

we should give deference to the district court's "findings of fact" on this issue. We disagree.

■■■ Contract interpretation presents a question of law. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009). Here, we conclude that Isaac demonstrated a clear and unambiguous intent to proceed under the *Schmidt–Clothier* procedure and to settle her negligence claim against the Hos under that procedure. The letter giving notice of the settlement expressly referenced *Schmidt–Clothier*, and the language about preventing the settlement is consistent with our precedent. *See Gusk*, 559 N.W.2d at 424 (stating that "*Schmidt v. Clothier* substitutions, by their very nature, prevent settlements between insureds and tortfeasors."). Moreover, the letter does not express any intent to modify or avoid the *Schmidt–Clothier* procedure. To the contrary, consistent with *Schmidt–Clothier*, Isaac's letter states: "If [Auto Club] does not intend to substitute its draft, please notify me immediately so that we can finalize the settlement with Progressive without further delay." And the letter notifies Auto Club of Isaac's intent to pursue a UIM claim. We therefore conclude that Isaac elected to settle her negligence claim under the *Schmidt–Clothier* procedure.

We conclude that the district court erred in denying the Hos' motion for judgment as a matter of law. An injured party may not elect to proceed under the *Schmidt–Clothier* procedure and agree to settle her negligence action with the tortfeasor for what she concludes is the best settlement, accept the substituted check from the UIM carrier, and then pursue her negligence claim against the tortfeasor. Because we hold that the district court erred in denying the Hos' motion, it is not necessary to address Auto Club's argument that it is entitled to a credit for its substitution check.[1] Moreover, Hos' motion to strike Isaac's argument seeking restoration of the collateral source deductions is denied as moot. Accordingly, we reverse the court of appeals' decision affirming the denial of the Hos' motion for judgment as a matter of law and affirm the court of appeals' decision reversing the judgment in favor of Auto Club.

Affirmed in part and reversed in part.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

1. Although Auto Club has a potential subrogation claim against the Hos, a subrogation right arises only after an insurer pays benefits to its insured. *See Baumann*, 459 N.W.2d at 925; *Schmidt–Clothier*, 338 N.W.2d at 261–62. The district court proceedings here involved only the negligence claim, and not a subrogation claim.