Michael RONNING, Appellant,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Respondent.

No. A16–0538.

Court of Appeals of Minnesota.

Nov. 7, 2016.

Review Denied Jan. 17, 2017.

Sam Hanson, Robert J. King, Jr., Benja-
min E. Gurstelle, Briggs and Morgan,
P.A., Minneapolis, MN, for appellant.

David J. Hoekstra, David M. Werwie &
Associates, St. Paul, MN, for respondent.

Considered and decided by KIRK,
Presiding Judge; SCHELLHAS, Judge;
and BJORKMAN, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's
rule 12.02(e) dismissal of his claim for un-
derinsured motorist benefits based on his
failure to first recover from the underin-
sured tortfeasor through adjudication or
settlement. We affirm.

### FACTS [1]

In April 2012, appellant Michael Ron-
ning suffered permanent injuries in Iowa

1. The facts in this section are derived from     the allegations contained in Ronning's

after a pickup truck in which he was a passenger collided with a vehicle driven by Lawrence Kruger. Respondent State Farm Mutual Automobile Insurance Company insured the truck under a policy that included $1 million in underinsured motorist coverage. Ronning retained an attorney to sue Kruger. Kruger's only liability insurance was a bodily-injury policy issued by Farm Bureau Property & Casualty Insurance Company with a coverage limit of $100,000. In August 2015, after Ronning's attorney failed to sue Kruger within Iowa's two-year statute-of-limitations period for personal injury claims, Ronning sued State Farm for underinsured motorist benefits.[2] State Farm moved the district court to dismiss Ronning's claim for failure to state a claim upon which relief can be granted.

Meanwhile, Ronning also commenced a malpractice lawsuit against his former attorney for failing to timely sue Kruger. Ronning and his former attorney agreed to settle the malpractice claim, and Ronning sent State Farm a purported *Schmidt–Clothier* notice, informing it of the tentative settlement. State Farm did not substitute a payment to Ronning in the amount of the settlement. Instead, State Farm responded by amending its motion to dismiss and asking the district court to declare the *Schmidt–Clothier* notice invalid, or, in the alternative, to stay the 30–day notice period until the court determined whether Ronning had pleaded a legally viable underinsured motorist claim.

The district court granted State Farm's motion to dismiss, concluding that because Ronning admittedly could not resolve his time-barred tort claim against Kruger

through adjudication or settlement, he could not satisfy the condition precedent for bringing an underinsured motorist claim against State Farm.

This appeal follows.

## ISSUE

Did the district court err by dismissing Ronning's underinsured motorist claim because he failed to first recover from Kruger?

## ANALYSIS

On appeal from a dismissal under rule 12.02(e) for failure to state a claim upon which relief can be granted, we review the legal sufficiency of the claim de novo. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 692 (Minn.2014). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. "We consider only those facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in favor of the nonmoving party." *Graphic Commc'ns*, 850 N.W.2d at 692. "A claim is sufficient to survive a motion to dismiss if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Id.* (quotation omitted). But legal conclusions in the complaint are not binding, and the plaintiff must provide more than labels and conclusions. *Id.*

amended complaint. *See Figgins v. Wilcox*, 879 N.W.2d 653, 654 n. 1 (Minn.2016) ("Because this case reaches us on appeal from a dismissal for failure to state a claim, the factual record is still undeveloped and the facts recited here are drawn from appellant's complaint." (citation omitted)).

**2.** Ronning's initial complaint also raised a claim for uninsured motorist benefits. He later filed an amended complaint omitting that claim.

The Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2014), requires insurers to include underinsured motorist coverage in their policies in the event an insured is involved in an accident with an "underinsured motor vehicle." Minn.Stat. § 65B.49, subds. 3a(1), 4a. The No–Fault Act defines "underinsured motor vehicle" as "a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subd. 17. Underinsured motorist coverage is available to insureds who are "legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles." *See id.*, subd. 19.

█ Here, the district court dismissed Ronning's underinsured motorist claim because he failed to first recover from Kruger. "[R]ecovery from the tortfeasor's liability insurance is a 'condition precedent' to bringing an underinsured claim." *George v. Evenson*, 754 N.W.2d 335, 340 (Minn.2008). The supreme court has articulated two ways an insured may satisfy that condition precedent. First, the insured may conclude a tort action against the underinsured tortfeasor, and, if the judgment exceeds the limits of the tortfeasor's policy, the insured then may seek underinsurance benefits. *Emp'rs Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 857 (Minn.1993). Second, the insured may obtain his "best settlement" from the tortfeasor, provide *Schmidt–Clothier* notice to the underinsurance carrier, and then bring a claim for underinsurance benefits. *Id.*

In *Schmidt v. Clothier*, the supreme court considered the effect that an insured's settlement with the tortfeasor had on the insured's right to pursue underinsurance benefits. *Schmidt v. Clothier*, 338

N.W.2d 256, 261–63 (Minn.1983), *superseded in part by statute*, 1989 Minn. Laws ch. 213, § 2, at 648 (codified at Minn.Stat. § 65B.49, subd. 4a). The underinsurer in *Schmidt* argued that a settlement with the tortfeasor without the underinsurer's consent would destroy its subrogation right against the tortfeasor. *Id.* at 261. The court adopted a procedure for protecting an underinsurer's subrogation right when the insured chooses to settle. *Id.* at 263. The court held that the underinsurer is entitled to 30 days' written notice of the insured's tentative settlement with the tortfeasor. *Id.* If the underinsurer believes that a subrogation claim against the tortfeasor is worth pursuing, it can preserve the claim by "substitut[ing] its payment to the insured in an amount equal to the tentative settlement." *Id.* When an underinsurer pays benefits to the insured and gives the tortfeasor notice of the payment, "a subsequent release obtained by the tortfeasor will not defeat the [underinsurer's] subrogation right" against the tortfeasor. *Id.* at 262. If the underinsurer believes that a subrogation claim would not be worthwhile, it may allow the notice period to expire without substituting its payment. *Id.* at 263. The insured then is free to bring an underinsurance claim, but the underinsurer is barred from seeking recovery from the tortfeasor through subrogation. *Id.*

█ Ronning concedes that, because of his former attorney's negligence, he cannot resolve a tort claim against Kruger through adjudication or settlement. But Ronning nevertheless asserts that he still may claim underinsurance benefits from State Farm because the only *statutory* condition precedent for bringing an underinsurance claim is that the insured is "legally entitled to recover damages." In support of his argument, Ronning cites *Miklas v. Parrott*, 684 N.W.2d 458 (Minn.

2004). In *Miklas*, the supreme court addressed whether a claim for uninsured motorist benefits based on wrongful death had to be brought within the three-year wrongful-death limitations period or the six-year contract limitations period. 684 N.W.2d at 460. The court considered the statutory definition of "uninsured motorist coverage," *id.* at 461, which characterizes such coverage as "for the protection of persons ... who are legally entitled to recover damages for bodily injury from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles," Minn.Stat. § 65B.43, subd. 18. The court concluded that the phrase "legally entitled to recover damages" did not require the insured to comply with the shorter three-year wrongful-death limitations period. *Miklas*, 684 N.W.2d at 463. Instead, the court concluded that "legally entitled to recover damages" meant only that the insured had to establish "fault and damages" to be entitled to uninsured motorist benefits. *Id.*

Ronning argues that because the No–Fault Act uses the same "legally entitled to recover damages" phrase when defining "underinsured motorist coverage," Minn. Stat. § 65B.43, subd. 19, he need not comply with the recovery-from-tortfeasor condition precedent articulated in *Nordstrom*. Although Ronning is correct that both statutory definitions use the phrase "legally entitled to recover damages," Minn.Stat. § 65B.43, subds. 18, 19, we reject Ronning's broad reading of *Miklas*. Nothing in *Miklas* suggests that the supreme court intended to overturn *Nordstrom* and eliminate the nonstatutory condition precedent for underinsurance claims. The *Miklas* court did not cite *Nordstrom* or mention the condition-precedent requirement for underinsurance claims. And since deciding *Miklas*, the supreme court has cited *Nordstrom* favorably on several occasions and continued to apply the condition-prec-

edent requirement. *See, e.g., Isaac v. Vy Thanh Ho*, 825 N.W.2d 379, 383–84 (Minn. 2013); *George*, 754 N.W.2d at 340. Moreover, because *Miklas* involved uninsured motorist benefits, Ronning's argument that *Miklas* eliminated the condition precedent for *underinsurance* claims overlooks the fact that the two types of claims have different requirements. *See Oganov v. Am. Family Ins. Grp.*, 767 N.W.2d 21, 26 (Minn.2009) (recognizing that differences exist between underinsured and uninsured motorist claims and providing example that uninsured-motorist-benefits claimant "does not have to recover first from the uninsured tortfeasor; rather, the claimant merely must show that the tortfeasor was uninsured"); *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 402 (Minn.2000) (concluding that underinsurance claims "accrue and the statute of limitations begins to run when the [underinsurance] claim becomes ripe by settlement or adjudication of the claim against the tortfeasor"); *Gusk v. Farm Bureau Mut. Ins. Co.*, 559 N.W.2d 421, 424 (Minn.1997) ("[U]nderinsured and uninsured motorist coverage obligations are presumed separate."); *see also Hegseth v. Am. Family Mut. Ins. Grp.*, 877 N.W.2d 191, 196 (Minn.2016) ("The [law] does not impose a condition precedent to the assertion of an excess [uninsured motorist] claim...."). The *Miklas* court's conclusion that an insured must establish no more than "fault and damages" is limited to its analysis of which statute of limitations applies to a claim for uninsured motorist benefits and does not alter the condition-precedent requirement for underinsurance claims.

Ronning's also improperly relies on *Hanbury v. Am. Family Mut. Ins. Co.*, 865 N.W.2d 83 (Minn.App.2015), *review denied* (Minn. Aug. 25, 2015). In *Hanbury*, we held that the No–Fault Act requires insurers to provide underinsured motorist

coverage only to insureds who sustain bodily injury in a motor-vehicle accident. 865 N.W.2d at 89. In summarizing the relevant law, we quoted *Miklas* for the proposition that "[a]n insured person is 'legally entitled to recover damages' if that person has established 'fault and damages' against the underinsured driver." *Id.* at 86. But *Hanbury* does not suggest that an insured has a ripe underinsured motorist claim merely because he can show damages and the tortfeasor's fault. We did not—and could not—overturn supreme court precedent, such as *George*, 754 N.W.2d at 340, and *Nordstrom*, 495 N.W.2d at 857, which require that the insured first recover from the tortfeasor before seeking underinsurance benefits. *See Brainerd Daily Dispatch v. Dehen*, 693 N.W.2d 435, 439–40 (Minn.App.2005) (stating that "we are bound to follow Minnesota Supreme Court precedent"), *review denied* (Minn. June 14, 2005).

■ We are unconvinced by Ronning's argument that the district court prematurely dismissed his complaint because a fact issue exists as to whether State Farm has been prejudiced. In *Am. Family Mut. Ins. Co. v. Baumann*, the supreme court held that when an insured releases a tortfeasor without giving the underinsurer adequate *Schmidt–Clothier* notice, a presumption arises that the underinsurer is prejudiced by the lost opportunity to preserve its subrogation right. 459 N.W.2d 923, 925, 927 (Minn.1990). The insured may rebut this presumption by demonstrating by a preponderance of the evidence that the tortfeasor was not prejudiced. *Id.; see also Van Kampen v. Waseca Mut. Ins. Co.*, 754 N.W.2d 578, 586 (Minn.App.2008) (stating that "evidence that the tortfeasor could not pay any amount greater than its insurance coverage" is sufficient, but not necessary, to rebut the presumption of prejudice). If the insured fails to rebut the presumption, the underinsurance claim is forfeited. *Baumann*, 459 N.W.2d at 927.

But because satisfying the condition precedent is necessary for the *existence* of a valid underinsured motorist claim, Minnesota courts have engaged in prejudice analyses only when the insured brought a timely action against the tortfeasor but failed to provide the underinsurer with adequate notice of a tentative settlement. *See, e.g., Baumann*, 459 N.W.2d at 924–27; *Van Kampen*, 754 N.W.2d at 581; *Kluball v. Am. Family Mut. Ins. Co.*, 706 N.W.2d 912, 914–15 (Minn.App.2005). The supreme court has reiterated that a judgment against or settlement with the tortfeasor must occur before an underinsurance claim ripens. *See Washington v. Milbank Ins. Co.*, 562 N.W.2d 801, 806 (Minn.1997) ("[T]he insured must first recover from the tortfeasor's insurance company by either pursuing the tort claim to conclusion in a district court action or by reaching a settlement in accordance with the procedures set forth in *Schmidt v. Clothier* before pursuing the [underinsurance] claim." (footnote omitted)); *Nordstrom*, 495 N.W.2d at 857 ("[A] recovery from the tortfeasor's liability insurance is a nonarbitrable condition precedent to bringing an underinsured claim. Until there has been a recovery from the tortfeasor's insurer, the claimant's underinsured claim simply has not matured."); *see also Oanes*, 617 N.W.2d at 407 (holding that, for statute-of-limitations purposes, an underinsurance claim "will accrue when the condition precedent to raising the [underinsurance] claim ... identified in *Nordstrom* has been satisfied, not before"). By leapfrogging to the question of prejudice, Ronning ignores caselaw demonstrating that his claim is not ripe until he recovers from Kruger. Because no underinsurance claim exists here, the question of prejudice is irrelevant.

Ronning also attempts to circumvent the condition-precedent requirement by suggesting that he may proceed with his unripe underinsurance claim so long as he "credits" State Farm for the full liability limits of Kruger's insurance. The argument is unconvincing because it is detached from the statutory limit on State Farm's liability. The No–Fault Act provides that "[w]ith respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle." Minn. Stat. § 65B.49, subd. 4a. An underinsurer's liability is therefore statutorily tied to the damages exceeding a recovery from the tortfeasor's insurance, not the insured's willingness to "credit" a certain amount. Allowing an insured to claim underinsurance benefits without first recovering from the tortfeasor risks inappropriately elevating underinsurance coverage to the status of primary coverage. *See Nordstrom,* 495 N.W.2d at 858 ("[D]enying claimants the option of proceeding first with an unmatured underinsurance claim reduces the likelihood of underinsurance becoming primary coverage, which would be contrary to the designed role of underinsurance...."); *see also Johnson v. Am. Family Mut. Ins. Co.,* 426 N.W.2d 419, 422 (Minn.1988) ("Underinsured motorist coverage ... is not some optional protection which an injured party can choose in lieu of asserting a claim against an insured tortfeasor.").

By rejecting Ronning's arguments, we do not leave insureds like him remediless. As the district court recognized, the most appropriate course of action in this situation is to address the lost underinsurance claim in a lawsuit against the negligent attorney. Ronning conceded at oral argument before this court that he settled with his former attorney for $200,000, which is $100,000 more than Kruger's bodily-injury coverage limit. Ronning's settlement therefore appears to have contemplated the underinsurance benefits he now improperly attempts to recover from State Farm. *See Richards v. Milwaukee Ins. Co.,* 518 N.W.2d 26, 28 (Minn.1994) (noting that preventing double recovery is a "primary objective" of the No–Fault Act).

## DECISION

Because Ronning did not recover from the underinsured tortfeasor through adjudication or settlement, Ronning did not have a ripe claim for underinsured motorist benefits. The district court therefore did not err by dismissing Ronning's underinsurance claim under rule 12.02(e).

**Affirmed.**