STATE OF MINNESOTA

IN SUPREME COURT

A12-1555

Court of Appeals                                                    Dietzen, J.
                                   Took no part, Page, Stras, and Lillehaug, JJ.
                                            Meyer, Helen, Acting Justice[1]

Graphic Communications Local 1B
Health & Welfare Fund "A", et al.,

              Respondents/Cross-Appellants,

vs.                                                         Filed: July 2, 2014
                                                    Office of Appellate Courts
CVS Caremark Corporation, et al.,

              Appellants/Cross-Respondents,

Coborn's Incorporated,

              Appellant/Cross-Respondent,

Kmart Holding Corporation, et al.,

              Appellants/Cross-Respondents,

Snyder's Drug Stores (2009), Inc., et al.,

              Appellants/Cross-Respondents,

Target Corporation,

              Appellant/Cross-Respondent,

---

[1]      Appointed pursuant to Minn. Const. art VI, § 2, and Minn. Stat. § 2.724, subd. 2 (2012).

1

Walgreen Co.,

Appellant/Cross-Respondent,

Wal-Mart Stores, Inc.,

Appellant/Cross-Respondent.

_____

David L. Hashmall, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, Minnesota;

Perrin Rynders, Bryan R. Walters, Varnum LLP, Grand Rapids, Michigan; and

John W. Barrett, Bailey & Glasser LLP, Charleston, West Virginia, for respondents/cross-appellants.

Lewis A. Remele, Jr., Christopher R. Morris, Bassford Remele, P.A., Minneapolis, Minnesota; and

Robert H. Griffith, Foley & Lardner LLP, Chicago, Illinois, for appellants/cross-respondents CVS Caremark Corporation, et al.

Kevin D. Hofman, Ronald B. Peterson, Halleland Habicht P.A., Minneapolis, Minnesota, for appellant/cross-respondent Coborn's Incorporated.

Tracy J. Van Steenburgh, Nilan Johnson Lewis, P.A., Minneapolis, Minnesota, for appellants/cross-respondents Kmart Holding Corporation, et al.

James K. Langdon, Dorsey & Whitney, Minneapolis, Minnesota, for appellants/cross-respondents Snyder's Drug Stores (2009), Inc., et al.

Wendy J. Wildung, Craig S. Coleman, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for appellant/cross-respondent Target Corporation.

Todd A. Noteboom, Elizabeth Wiet Reutter, Leonard, Street and Deinard, PA, Minneapolis, Minnesota, for appellant/cross-respondent Walgreen Co.

David R. Marshall, Joseph J. Cassioppi, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for appellant/cross-respondent Wal-Mart Stores, Inc.

2

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Jennifer Yatskis Dukart, Assistant Attorney General, Saint Paul, Minnesota, for amicus curiae State of Minnesota.

Dale O. Thornsjo, Lance D. Meyer, O'Meara, Leer, Wagner & Kohl, P.A., Minneapolis, Minnesota, for amici curiae The Insurance Federation of Minnesota, The American Tort Reform Association, and Minnesotans for Lawsuit Reform.

William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

Leah Ceee O. Boomsma, Briggs and Morgan, P.A., Minneapolis, Minnesota, for amici curiae The National Association of Chain Drug Stores, National Community Pharmacists Association, Retail Litigation Center, Minnesota Pharmacists Association, Independent Pharmacy Cooperative, Thrifty White Pharmacy, and the Minnesota Chamber of Commerce.

Donald R. McNeil, Stephen F. Buterin, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota, for amicus curiae National Labor Alliance of Health Care Coalitions.

Mark S. Olson, Mark Schneebeck, Oppenheimer, Wolff & Donnelly, L.L.P., Minneapolis, Minnesota; and

Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, Virginia, for amicus curiae Product Liability Advisory Council, Inc.

_____

## S Y L L A B U S

1. Minnesota Statutes § 151.21, subd. 4 (2012) does not create a private cause of action in favor of union-sponsored health and welfare benefit funds against pharmacies for failing to pass on the difference between the acquisition cost of brand name drugs and substituted generic prescription drugs.

2. An omission-based consumer fraud claim is actionable under Minn. Stat. § 325F.69, subd. 1 (2012) when special circumstances exist that trigger a legal or equitable duty to disclose the omitted facts.

3

3. The amended complaint did not allege facts that would trigger a legal or equitable duty for appellant pharmacies to disclose prescription-drug acquisition costs; therefore, the complaint failed to state a claim upon which relief can be granted under Minn. Stat. § 325F.69, subd. 1.

Affirmed in part, reversed in part.

O P I N I O N

DIETZEN, Justice.

At issue in this case is (1) whether Minn. Stat. § 151.21, subd. 4 (2012) creates a private cause of action in favor of respondents, two health and welfare funds, against appellant pharmacies for failing to pass on the difference between the acquisition cost of brand name drugs and substituted generic prescription drugs; and (2) whether the funds pleaded a claim for relief under Minn. Stat. § 325F.69, subd. 1 (2012), Minnesota's Consumer Fraud Act (CFA), sufficient to survive a motion to dismiss under Rule 12.

In their amended complaint, the funds allege, among other things, that the pharmacies engaged in fraudulent, misleading, or deceptive practices in connection with the sale of merchandise by failing to pass on to the funds the entire difference between the acquisition cost of the generic prescription drug dispensed and its brand name equivalent as required by Minn. Stat. § 151.21, subd. 4. The district court granted the pharmacies' Rule 12 motion to dismiss the complaint, concluding that Minn. Stat. § 151.21, subd. 4, does not create a private cause of action in favor of the funds, and that the funds failed to plead a claim for relief under the CFA. The court of appeals unanimously affirmed the dismissal of the claim brought under Minn. Stat. § 151.21,

4

subd. 4, but in a divided decision, the court of appeals reversed the dismissal of the claim brought under the CFA, concluding that the funds pleaded a legally sufficient claim. Because we conclude that Minn. Stat. § 151.21, subd. 4, does not create a private cause of action, and that the funds failed to plead a legally sufficient claim under the CFA, we affirm in part and reverse in part.

Respondents/cross-appellants, Graphic Communications Local 1B Health & Welfare Fund "A" and The Twin Cities Bakery Drivers Health and Welfare Fund (the Funds), are jointly administered Taft-Hartley Funds under section 302(c)(5) of the National Labor Relations Act, 29 U.S.C. § 186(c) (2012), and are authorized to administer employee welfare benefit plans as defined in section 3(1) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(1) (2012).[2] The Funds provide health benefits, including prescription-drug benefits, to their approximately 2,600 active plan participants and their spouses and dependents. Appellants/cross-respondents (the

---

[2] The facts are taken from the Funds' first amended complaint. *See Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003) ("[We] consider only the facts alleged in the complaint, accepting those facts as true . . . ."). The Pharmacies ask us to take judicial notice of the fact that the price the Funds paid for prescription drugs was set by contracts between the Pharmacies and pharmacy benefit managers acting on behalf of the Funds. Because these alleged contracts are not mentioned in the complaint, we decline to take judicial notice of them. *See State ex rel. Remick v. Clousing*, 205 Minn. 296, 301, 285 N.W. 711, 714 (1939) ("Judicial notice is to be taken with caution and every reasonable doubt as to the propriety of its exercise in a given case should be resolved against it.").

5

Pharmacies)[3] are a number of pharmacies that operate or have operated, either directly or through affiliates, retail pharmacies in Minnesota during the period from 2003 to the present.

This case involves the sale and pricing of generic prescription drugs. When a patent on a drug developed by a pharmaceutical company expires, other drug manufacturers may obtain government approval to manufacture and sell generic versions of the drug.[4] A generic drug is identical—or bioequivalent—to a brand name drug in dosage, form, safety, strength, route of administration, quality, performance, characteristics, and intended use. Although generic drugs are chemically identical to their brand name counterparts, they are sold at substantial discounts in comparison to the brand name price, in part because the generic manufacturer is generally not required to engage in advertising, marketing and promotion, or significant research and development.

Minnesota law requires that when a consumer is prescribed a brand name drug, a Minnesota-licensed pharmacist must substitute a generic equivalent unless the prescription states "dispense as written." Minn. Stat. § 151.21, subd. 3 (2012). Further, the pharmacist must pass on to the purchaser of the generic prescription drug any cost

---

[3] The Pharmacies are CVS Caremark Corporation, et al., Coborn's Incorporated, Kmart Holding Corporation, et al., Snyder's Drug Stores (2009), Inc., et al., Target Corporation, Walgreen Co., and Wal-Mart Stores, Inc.

[4] This background on generic prescription drugs is taken from the Funds' amended complaint. Additional background can be found on the Food and Drug Administration website, *see* U.S. Food and Drug Administration, *Facts About Generic Drugs*, http://www.fda.gov/Drugs/ResourcesForYou/Consumers/BuyingUsingMedicineSafely/ UnderstandingGenericDrugs/ucm167991.htm (last updated Sept. 19, 2012).

savings realized by the lower acquisition costs of the generic drug as compared to its brand name equivalent. *Id.*, subd. 4 ("Any difference between acquisition cost to the pharmacist of the drug dispensed and the brand name drug prescribed shall be passed on to the purchaser.").

The Funds have purchased prescription drugs and/or reimbursed their plan participants and beneficiaries for the purchase of generic prescription drugs. According to the Funds, they have engaged in over 200,000 prescription-drug transactions with the Pharmacies since July 28, 2003. The Funds allege that during the relevant time period the Pharmacies concealed from the Funds their acquisition costs for prescription drugs and routinely overcharged the Funds for the purchases of generic prescription drugs in violation of Minn. Stat. § 151.21, subd. 4.

The amended complaint sets forth specific examples of the alleged generic prescription drug overcharges. For example, the Funds allege that in 2008, the Pharmacies' acquisition cost for a four-tablet supply of the brand name drug Fosamax was $70.72. The Pharmacies sold the four-tablet supply for $79.46, a gross profit of $8.74. On the other hand, the Pharmacies' acquisition cost of the generic equivalent Alendronate was $6.24 for a four-tablet supply. The Funds claim that to satisfy Minn. Stat. § 151.21, subd. 4, the highest price for which the Pharmacies could sell Alendronate would be $14.98 (the acquisition cost of $6.24 plus the gross profit of $8.74 realized by the sale of the brand name Fosamax). The Funds claim that the Pharmacies violated Minn. Stat. § 151.21, subd. 4, by selling Alendronate for as much as $70.83 for a four-tablet supply, an overcharge of $55.85.

7

In July 2009, the Funds filed suit against the Pharmacies in state district court, alleged various generic drug pricing claims based on violations of Minn. Stat. § 151.21, subd. 4, and also requested class certification. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, Civil No. 09-2203 (MJD/JSM), 2011 WL 5826687, at *1 (D. Minn. Oct. 13, 2011). The Pharmacies removed the case to federal court in August 2009, and the parties litigated the jurisdiction of the federal court to hear the case. *Id.* at *1-3. In November 2011, the federal district court granted the Funds' motion to remand the case to state court. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, Civil No. 09-2203 (MJD/JSM), 2011 WL 5827182, at *1 (D. Minn. Nov. 18, 2011).

On remand to state district court, the Funds filed an amended complaint asserting causes of action for (1) violations of the Pharmacy Practice Act, Minn. Stat. § 151.21, subd. 4; (2) violations of Minnesota's Consumer Fraud Act (CFA), Minn. Stat. § 325F.69, subd. 1; and (3) unjust enrichment. In July 2012, the district court dismissed the Funds' complaint with prejudice, concluding that no private cause of action exists under Minn. Stat. § 151.21, subd. 4, and that the Funds failed to plead an actionable claim under the CFA because the Pharmacies did not have a duty to disclose their prescription-drug acquisition costs. The court also concluded that without a private cause of action under Minn. Stat. § 151.21, subd. 4, the Funds' unjust enrichment claim necessarily failed.

In a divided opinion, the court of appeals affirmed in part, reversed in part, and remanded. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark*

8

*Corp.*, 833 N.W.2d 403, 414 (Minn. App. 2013). The court unanimously affirmed the dismissal of the claim brought under Minn. Stat. § 151.21, subd. 4, concluding that the Legislature did not intend to create a private cause of action based on a violation of the statute. *Graphic Commc'ns Local 1B Health & Welfare Fund "A"*, 833 N.W.2d at 409. But in a divided decision, the court reversed the dismissal of the claim brought under the CFA, with the majority concluding that the Funds pleaded a legally sufficient claim that the Pharmacies' failure to disclose acquisition costs and subsequent overcharges were material omissions in violation of the CFA that injured the Funds. *Id.* at 409-13.

Subsequently, the Pharmacies sought review of the court of appeals' determination that the Funds pleaded a legally sufficient claim under the CFA, and the Funds sought review of the court of appeals' decision that they did not have a private cause of action under Minn. Stat. § 151.21, subd. 4. We granted review. Because we conclude that Minn. Stat. § 151.21, subd. 4, does not create a private cause of action, and the Funds failed to plead an actionable claim under the CFA, we affirm in part and reverse in part.

I.

On appeal the parties raise two issues. First, the Funds argue that the court of appeals erred in concluding that Minn. Stat. § 151.21, subd. 4, does not create a private cause of action in their favor against the Pharmacies for failing to pass on the difference between the acquisition cost of brand name drugs and substituted generic prescription drugs. Second, the Pharmacies argue that the court of appeals erred in concluding that the Funds pleaded an actionable claim for relief under the CFA, Minn. Stat. § 325F.69, subd. 1, sufficient to survive a motion to dismiss under Rule 12.

9

Statutory interpretation is a question of law that we review de novo. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2012). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). Further, we read the statute as a whole and give effect to all of its provisions. *In re Welfare of J.J.P.*, 831 N.W.2d at 264.

We first address whether Minn. Stat. § 151.21, subd. 4, creates a private cause of action in favor of a union-sponsored health and welfare benefit plan. To answer that question, we will review the relevant case law regarding when a statute creates a private cause of action, then examine the statutory framework of the Pharmacy Practice Act to provide context, and last examine the relevant statute, Minn. Stat. § 151.21, subd. 4.

We have addressed the question of when a statute creates a private cause of action to enforce its terms in two recent cases. *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 863 (Minn. 2010); *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007). In *Becker*, we considered, among other issues, whether the Child Abuse Reporting Act (CARA), Minn. Stat. § 626.556 (2012), creates a private cause of action against a mandatory reporter who fails to report suspected child abuse. 737 N.W.2d at 207-09. We observed that "[a] statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Id.* at 207 (citing *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990)). We concluded that CARA does not expressly or by clear implication create a private cause of action against a

10

mandatory reporter who fails to report suspected child abuse. *Id.* at 207-08. We reasoned that the Legislature expressly created criminal, but not civil, penalties for failure to report and also expressly created two private causes of action for violations of statutory provisions near the section at issue, indicating that the Legislature did not intend to create an implied private cause of action against a mandatory reporter. *Id.* at 208-09.

In *Krueger*, we considered whether the Minnesota Human Rights Act, Minn. Stat. § 363A.17 (2012), creates a private cause of action in favor of a person not a party to a contract for discrimination in the performance of the contract. 781 N.W.2d at 863. We observed that when interpreting a statute to determine if it creates a cause of action, we "determine whether the statute actually *provides* a cause of action to a particular class of persons." *Id.* We also observed that we have been reluctant to recognize causes of action under a statute where they do not clearly exist. *Id.*[5] We concluded that section 363A.17 is unambiguous and does not provide a cause of action for a person not a party to a contract. *Id.* at 863-64. We reasoned that under a plain reading of the statute, the

---

[5]     *See, e.g.*, *Bruegger v. Faribault Cnty. Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn. 1993) (holding that the Crime Victims Reparations Act does not, either expressly or impliedly, provide a cause of action against law enforcement agencies that fail to inform crime victims of their rights to seek reparations); *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990) (concluding that a statute criminalizing child abduction by the noncustodial parent did not explicitly or implicitly authorize a civil cause of action); *Morris v. Am. Family Mut. Ins. Co.*, 386 N.W.2d 233, 235 (Minn. 1986) (holding that the plaintiff could not state a cause of action under the Unfair Claims Practices Act because the Act said nothing about a private person having a right to sue the insurer for a violation of the Act); *Nemec v. Brown*, 150 Minn. 252, 254, 184 N.W. 956, 957 (1921) (holding that a former prisoner did not state a valid cause of action against a sheriff for the sheriff's violation of a statute that created a duty and provided criminal penalties for breach of the duty but said nothing about civil liability).

Legislature intended to provide contracting parties with the right to make and perform their contracts without being subject to illegal discrimination, but the Legislature did not provide remedies to persons other than the contracting parties. *Id.* at 864.

We next examine the relevant portions of the Pharmacy Practice Act of 1988, Minn. Stat. §§ 151.01-.40 (2012), to provide context. The Act establishes the State Board of Pharmacy and gives it broad powers to regulate the practice of pharmacy, including the licensure and discipline of pharmacists and pharmacies, and to regulate the manufacture and wholesale and retail sale of drugs, within the state. Minn. Stat. §§ 151.02, 151.06. Section 151.21 regulates, among other things, when a pharmacist may substitute prescription drugs and medicines different from the one prescribed, the pricing of prescription drugs, and signage at the pharmacy. Subdivision 3 provides:

> When a pharmacist receives a [prescription] on which the prescriber has not personally written in handwriting "dispense as written" or "D.A.W.," . . . and there is available in the pharmacist's stock a less expensive generically equivalent drug that, in the pharmacist's professional judgment, is safely interchangeable with the prescribed drug, then the pharmacist shall, after disclosing the substitution to the purchaser, dispense the generic drug, unless the purchaser objects.

Minn. Stat. § 151.21, subd. 3. Thus, when the statutory criteria are satisfied, a pharmacist "shall, after disclosing the substitution to the purchaser, dispense the generic drug, unless the purchaser objects." *Id.*

With the relevant case law and statutory framework in mind, we turn to Minn. Stat. § 151.21, subd. 4, which describes the pricing requirements at issue in this case. It provides:

12

A pharmacist dispensing a drug under the provisions of subdivision 3 shall not dispense a drug of a higher retail price than that of the brand name drug prescribed. If more than one safely interchangeable generic drug is available in a pharmacist's stock, then the pharmacist shall dispense the least expensive alternative. *Any difference between acquisition cost to the pharmacist of the drug dispensed and the brand name drug prescribed shall be passed on to the purchaser.*

Minn. Stat. § 151.21, subd. 4 (emphasis added).

The Funds concede that Minn. Stat. § 151.21, subd. 4, does not expressly set forth a private cause of action but contend that the statute provides for a private cause of action by clear implication.[6] Specifically, they argue that a cause of action is implied because subdivision 4 creates a direct beneficial right for purchasers of generic prescription drugs, and a private cause of action is the only way to enforce that right. Moreover, they contend that the Pharmacies violated their rights under subdivision 4 by failing to pass on the difference between the acquisition costs of brand name drugs and substituted generic drugs. It is true that even if the Legislature does not expressly create a statutory private cause of action, it may provide one by "clear implication." *Becker*, 737 N.W.2d at 207. But we are reluctant to recognize a private cause of action where one does not clearly exist in the statute. *Krueger*, 781 N.W.2d at 863. In determining whether a private cause

---

[6] The Funds urge us to apply the three-factor test first enumerated and applied in *Counties of Blue Earth v. Minn. Dep't of Labor & Indus.*, 489 N.W.2d 265, 268 (Minn. App. 1992), to ascertain whether Minn. Stat. § 151.21, subd. 4, creates an implied cause of action. This three-factor test is based on a similar four-factor test articulated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78 (1975). The Pharmacies argue that the factors are outdated, and legislative intent is dispositive. We conclude that in this case, the Legislature's intent is clear and dispositive under either party's proposed test. *See Becker*, 737 N.W.2d at 207 n.4 (declining to apply the *Cort* test where legislative intent was dispositive).

13

of action is clearly implied, we look to the language of the statute in question and its related sections. *See Krueger*, 781 N.W.2d at 863-64; *Becker*, 737 N.W.2d at 207-08.

Section 151.21, subdivision 4, does impose upon pharmacists a duty to pass on any acquisition cost savings of generic prescription drugs, but the text does not address the topic of a private cause of action in favor of purchasers of generic drugs. As a result, we cannot say that such a cause of action is clearly implied. Indeed, to do so would require us to add words to the statute that the Legislature did not supply. *See Krueger*, 781 N.W.2d at 864 (concluding that we "cannot read into the statute any additional rights" beyond those expressly enumerated); *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010) ("If the legislature fails to address a particular topic, our rules of construction 'forbid adding words or meaning to a statute' that are purposely omitted or inadvertently overlooked." (quoting *Genin v. 1996 Mercury Marquis*, 622 N.W.2d 114, 117 (Minn. 2001))).

Other provisions of the Act and relevant statutes provide the State Board of Pharmacy with broad authority to enforce section 151.21, subdivision 4. Specifically, the Board has the authority to enforce Minn. Stat. § 151.21, subd. 4, by suing a pharmacist for injunctive relief for violating the subdivision, *see* Minn. Stat. § 214.11 (2012); referring complaints regarding licensed pharmacists to the Attorney General for investigation, *see* Minn. Stat. § 214.103, subd. 5 (2012); taking action against the license of a pharmacist or the registration of a pharmacy for violating subdivision 4 of section 151.21, *see* Minn. Stat. § 151.06, subd. 1(a)(7)(ix); and imposing a civil penalty for each violation of subdivision 4, to "deprive a licensee or registrant of any economic advantage

14

gained by reason of the violation," *see* Minn. Stat. § 151.06, subd. 5. Moreover, any person violating any portion of the Act "shall be guilty of a misdemeanor." Minn. Stat. § 151.29. These express criminal and civil penalties demonstrate that the Legislature did not intend to provide an implied private civil cause of action against a pharmacist or pharmacy that violates Minn. Stat. § 151.21, subd. 4. *See Becker*, 737 N.W.2d at 207 (" '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' ") (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)).

Additionally, the Legislature expressly created a private cause of action to enforce a different portion of the Act. Specifically, any person injured by unfair price discrimination may bring a private cause of action to enforce the Act. Minn. Stat. § 151.061, subd. 2 (providing that "[a]ny person injured by unfair discrimination as defined in subdivision 1 may bring a civil action and recover damages"). The presence of an express cause of action in a related section of the statute at issue "demonstrates that the [L]egislature expressly creates civil liability when it intends to do so." *Becker*, 737 N.W.2d at 208. Because Minn. Stat. § 151.061, subd. 2, expressly creates a private cause of action to enforce another provision of the Act, it logically follows that the Legislature did not intend to create a private cause of action to enforce Minn. Stat. § 151.21, subd. 4.

Based on this analysis, we conclude that Minn. Stat. § 151.21, subd. 4, does not create a private cause of action in favor of the purchaser of generic prescription drugs against a pharmacist or pharmacy. Specifically, the language of subdivision 4 does not expressly or by clear implication create a private cause of action. Moreover, the

15

Legislature provided broad authority to the State Board of Pharmacy, as well as the provision of criminal penalties, to enforce the pharmacist's duty to pass on the acquisition cost savings of generic prescription drugs. Finally, Minn. Stat. § 151.061, subd. 2, expressly provides a private cause of action for a violation of the unfair price discrimination portion of the Act, which demonstrates that the Legislature did not intend to create an implied private cause of action under Minn. Stat. § 151.21, subd. 4. Consequently, we hold that the district court did not err when it dismissed the Funds' claim brought under the Pharmacy Practice Act.

## II.

The Pharmacies argue that the court of appeals erred in concluding that the Funds pleaded an actionable claim for a violation of Minnesota's Consumer Fraud Act (CFA), Minn. Stat. § 325F.69, subd. 1, sufficient to survive a motion to dismiss under Rule 12. When a case is dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim for which relief can be granted, we review the legal sufficiency of the claim de novo to determine whether the complaint sets forth a legally sufficient claim for relief. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). Rule 8.01 provides that a complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. We consider only those facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in favor of the nonmoving party. *In re Individual 35W Bridge Litig.*, 806 N.W.2d 811, 815 (Minn. 2011). A claim is sufficient to survive a motion to dismiss "if it is possible on any evidence which might be

16

produced, consistent with the pleader's theory, to grant the relief demanded." *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963); *accord Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010). But a legal conclusion in the complaint does not bind us, and a plaintiff must provide more than mere labels and conclusions. *Bahr*, 788 N.W.2d at 80.

The Funds' consumer fraud claim is brought pursuant to Minn. Stat. § 8.31, subd. 3a (2012) (the Private AG Statute), for alleged violations of the CFA.[7] Specifically, the Funds allege that the Pharmacies failed to pass on the entire acquisition cost savings of generic prescription drugs in violation of Minn. Stat. § 151.21, subd. 4, and unlawfully concealed from the Funds the Pharmacies' prescription-drug acquisition costs. The Pharmacies argue that the district court's dismissal of the Funds' direct claim under the Pharmacy Practice Act renders the Funds' consumer fraud claim not viable. Specifically, the Pharmacies contend that because the Funds cannot bring a direct cause of action to enforce section 151.21, subdivision 4, it logically follows that they cannot bring a statutory consumer fraud claim under the CFA to enforce section 151.21, subdivision 4. Alternatively, the Pharmacies argue that the Funds' consumer fraud claim fails as a matter of law because the complaint does not allege that the Pharmacies affirmatively misrepresented a material fact, or concealed a material fact that they had a duty to disclose. We will address each argument in turn.

---

[7] For ease of reference, we will refer to the Funds' claim brought under the Private AG Statute as their consumer fraud claim.

## A.

We first address whether the Funds' consumer fraud claim brought pursuant to the Private AG Statute is actionable in light of our decision to affirm the dismissal of the Funds' claim under the Pharmacy Practice Act. The Private AG Statute provides that "any person injured by a violation of" several enumerated statutes, including Minn. Stat. § 325F.69, "may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees." Minn. Stat. § 8.31, subd. 3a. Thus, a private party may bring a claim under the Private AG Statute for a violation of section 325F.69, subdivision 1, which provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn. Stat. § 325F.69, subd. 1.

We have previously considered the elements necessary to plead a consumer fraud claim under the CFA. *See Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2 (Minn. 2001). In *Group Health Plan*, we concluded that to state a claim that the CFA has been violated, "the plaintiff need only plead that the defendant engaged in conduct prohibited by the [CFA] and that the plaintiff was damaged thereby." *Id.* at 12. To recover damages under the Private AG Statute for a violation of the CFA, however, the plaintiff must plead and prove a causal relationship between the alleged injury and the wrongful conduct that violates the statute. *Id.* at 13.

18

We conclude that an injured party may bring a consumer fraud claim and recover damages under the Private AG Statute for conduct that violates section 151.21, subdivision 4, of the Pharmacy Practice Act provided that the plaintiff pleads and proves the required elements of a consumer fraud claim. The fact that the Pharmacy Practice Act does not provide a private cause of action does not bar a plaintiff from bringing a consumer fraud claim, provided that the alleged conduct is proscribed under the CFA. Claims under the Pharmacy Practice Act and the CFA are not mutually exclusive. Consequently, a person's conduct may violate both section 151.21, subdivision 4, for which there is no private cause of action, and the CFA, for which there is a private cause of action. The dismissal of the Funds' claim under the Pharmacy Practice Act, therefore, does not automatically preclude them from bringing a consumer fraud claim based on allegations that the Pharmacies' conduct was fraudulent, misleading, or deceptive in violation of the CFA.

B.

We next examine whether the Funds adequately pleaded facts showing that the Pharmacies engaged in actionable conduct under the CFA. The Pharmacies contend that the Funds' omission-based consumer fraud claim is only actionable if the Pharmacies had a duty to disclose the omitted or concealed information. They argue that the Funds' consumer fraud claim fails as a matter of law because the amended complaint does not allege that the Pharmacies affirmatively misrepresented a material fact or concealed a material fact that they had a duty to disclose.

19

The Funds argue that the Pharmacies' practice of overcharging for generic prescription drugs, coupled with the Pharmacies' concealment of facts that would allow the Funds to know they were being overcharged, rendered the sales fraudulent, misleading, and deceptive in violation of the CFA. Amicus Attorney General contends that the CFA prohibits material omissions of fact but does not impose a common law duty to disclose for the omission to be actionable. The Attorney General further argues that the Legislature "clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law." *State ex rel. Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn. 1993).

The court of appeals concluded, among other things, that in order for the Funds' consumer fraud claim to survive a motion to dismiss, the Funds' complaint need only allege that the Pharmacies' failure to disclose acquisition costs and subsequent overcharges were material omissions, and that the Funds were not required to allege that the Pharmacies had a duty to disclose the omitted information. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 833 N.W.2d 403, 411 (Minn. App. 2013).

Because the Funds' consumer fraud claim arises under section 325F.69, subdivision 1, we look to the language of the statute to answer the question of whether an omission-based claim is actionable and to determine what is required for the omission to be actionable. Our goal in interpreting the language of the statute is to effectuate the intent of the Legislature. Minn. Stat. § 645.16. In doing so, we give the words of the statute their plain and ordinary meaning. *Staab*, 813 N.W.2d at 72.

20

The relevant portion of the statute prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1. The conduct proscribed by the CFA is broad. The language of the statute indicates that the target of the CFA is deceitful conduct in connection with the sale of merchandise.[8] The statute encompasses "*any* fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." *Id.* (emphasis added). The word "deceptive" in the term "deceptive practice" means "tending to deceive," and the root word "deceive" means "[t]o cause to believe what is not true; mislead." *The American Heritage Dictionary of the English Language* 469, 470 (5th ed. 2011). Thus, the term "deceptive practice" refers to conduct that tends to deceive or mislead a person.

Many of the terms used in the CFA, including fraud and misrepresentation, have a well-defined meaning at common law. *See Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 192 (Minn. 2012) (listing the elements of a negligent misrepresentation claim); *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986) (listing the elements of a fraud claim). We presume the

[8]    Previously, we have concluded that the CFA proscribes a broader range of conduct than does the common law because the Legislature eliminated some of the elements of common law fraud. *See Alpine Air Prods., Inc.*, 500 N.W.2d at 790. For example, in *Group Health Plan*, we concluded that the CFA does not require common law reliance. 621 N.W.2d at 12. Our conclusion that common law reliance is not required was grounded in the language of the statute, which prohibits actionable conduct " 'whether or not any person has in fact been misled, deceived, or damaged thereby.' " *Id.* (quoting Minn. Stat. § 325F.69, subd.1). But we also observed that it is not the role of the court to either extend or narrow the reach of consumer protection beyond the language of the statute. *Id.* at 11.

21

Legislature was aware of the common law meaning of these terms when it enacted the CFA. *See U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 372 (Minn. 2011). Under the common law, a party may be liable for fraud either by making an affirmative statement that is false or by concealing or not disclosing facts under certain circumstances. *See M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992); *accord U.S. Bank N.A.*, 802 N.W.2d at 373. Our jurisprudence with respect to omission-based claims reflects the common law principle that for an omission to be actionable, it must be material to the transaction, *U.S. Bank N.A.*, 802 N.W.2d at 373, and the party concealing the fact must have been under a legal or equitable obligation to communicate the fact to the other party, *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 190 (Minn. 1999); *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 366, 244 N.W.2d 648, 650 (1976).

Under the common law, one party to a transaction has no duty to disclose material facts to the other party. *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972). But in *Klein*, we recognized that special circumstances may trigger a duty to disclose material facts and gave three examples of such special circumstances. First, a person who has a confidential or fiduciary relationship with the other party to the transaction must disclose material facts. *Id.* at 421, 196 N.W.2d at 622. Second, one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party. *Id.* at 421, 196 N.W.2d at 622. Third, a person who speaks must say enough to prevent the words communicated from misleading the other party. *Id.* at 421, 196 N.W.2d at 622. The

22

examples in *Klein* are not intended to be exclusive. *See Boubelik v. Liberty State Bank*, 553 N.W.2d 393, 398 (Minn. 1996).

We conclude that an omission-based consumer fraud claim is actionable under the CFA when special circumstances exist that trigger a legal or equitable duty to disclose the omitted facts.[9] The CFA did not eliminate the common law requirement that for an omission-based claim to be actionable, there must be a special circumstance that triggers a duty to disclose the omitted facts. The CFA prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." Minn. Stat. § 325F.69, subd. 1. There is nothing in the text of the statute that demonstrates an intent

---

[9] Other courts interpreting similar consumer fraud statutes have likewise concluded that a claim based on the omission of material facts is only actionable if there is a corresponding duty to disclose the omitted facts. *See, e.g.*, *Hendricks v. DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775, 782 (W.D. Mich. 2006) (interpreting the Michigan Consumer Protection Act and concluding that Michigan courts would not recognize a claim under the act for an omission "in the absence of a duty of disclosure"); *State ex rel. Horne v. AutoZone, Inc.*, 258 P.3d 289, 299 (Ariz. Ct. App. 2011) (interpreting the state consumer fraud statute and concluding "when the law imposes a duty to disclose certain information, the failure to disclose the information can constitute an affirmative deception under the act"), *vacated in part by* 275 P.3d 1278 (Ariz. 2012); *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 125 (Cal. Ct. App. 2006) (interpreting the Consumer Legal Remedies Act and concluding that for an omission to be actionable it "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose"); *Normand Josef Enter., Inc. v. Conn. Nat'l Bank*, 646 A.2d 1289, 1307-08 (Conn. 1994) (interpreting the Connecticut Unfair Trade Practices Act and concluding that "[a] failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose"); *Williamson v. Amrani*, 152 P.3d 60, 73 (Kan. 2007) (interpreting the Kansas Consumer Protection Act and concluding that in order for failure to disclose a material fact to constitute a deceptive act, "there must be a duty to disclose the fact"); *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 542-43 (N.J. Super. Ct. App. Div. 2003) (entering judgment notwithstanding the verdict in favor of defendant where plaintiff's consumer fraud claim was based on acts of omission but defendant had no duty to disclose).

23

to abrogate the common law rule that an omission is actionable only under special circumstances that trigger a duty to disclose. *See Bloom v. Am. Express Co.*, 222 Minn. 249, 254, 23 N.W.2d 570, 574 (1946) ("Statutes are enacted . . . with regard to the existing principles of the common law and of equitable jurisprudence, and should be so construed as to harmonize with the existing body of law, unless the intention to change or repeal it is apparent." (alteration in original) (citation omitted) (internal quotation marks omitted)); *see also Staab*, 813 N.W.2d at 73. We therefore interpret the CFA consistent with the common law duty-to-disclose rule.

Based upon our analysis set forth above, we conclude that a plaintiff bringing an action under the CFA must plead and prove not only an omission of material fact, but also special circumstances that trigger a duty to disclose. It is not enough that the plaintiff simply alleges that the defendant omitted material information in a transaction. Unlike other state consumer fraud statutes, Minnesota's CFA does not make material omissions actionable.[10] Consequently, we reject the court of appeals' conclusion and the Funds' argument that an omission is actionable so long as the omission is material.[11]

---

[10]    *See, e.g.*, Kan. Stat. Ann. § 50-626(b)(3) (Supp. 2013) (defining deceptive acts and practices to include "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact"); Md. Code Ann., Commercial Law § 13-301(9) (LexisNexis 2013) (defining "unfair or deceptive trade practices" to include, among other things, any "[d]eception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact"); N.J. Stat. Ann. § 56:8-2 (West 2012) (declaring "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact" to be an unlawful practice). Minnesota's CFA does not contain similar language prohibiting material omissions. When interpreting the CFA, we will not

(Footnote continued on next page.)

C.

Having concluded that an omission of material fact is actionable under the CFA when there are special circumstances that trigger a legal or equitable duty to disclose the omitted facts, we next examine the amended complaint to determine whether it sets forth a legally sufficient claim for relief. The Funds argue that the Pharmacies had a duty to disclose their prescription-drug acquisition costs to inform the Funds that the Pharmacies were overcharging them and to prevent the Funds from being misled.

We conclude that the Funds' claim fails as a matter of law. The Funds failed to allege any facts that would trigger a duty for the Pharmacies to disclose additional facts. Specifically, there is nothing in the Pharmacy Practice Act that required the Pharmacies to disclose their prescription-drug acquisition costs. Indeed, section 151.21, subdivision 4, merely provides that whenever a pharmacist dispenses a generic prescription drug in lieu of a prescribed brand name drug, "[a]ny difference between acquisition cost to the pharmacist of the drug dispensed and the brand name drug prescribed shall be passed on

---

(Footnote continued from previous page.)
add words to the statute that the Legislature did not supply. *See Grp. Health Plan, Inc.*, 621 N.W.2d at 11; *accord Johnson v. Cook Cnty.*, 786 N.W.2d 291, 295 (Minn. 2010).

[11]    We acknowledge that federal courts applying Minnesota law and interpreting the CFA have suggested that an omission-based consumer fraud claim is actionable even absent a duty to disclose, so long as the omission is material. *See Minn. ex rel. Hatch v. Fleet Mortg. Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001) (stating that for an omission to be actionable under the CFA, "the omission must be material," meaning that the omission "must naturally affect the person's decision or conduct" (citations omitted)); *see also Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1018 n.17 (D. Minn. 2012) (same). To the extent that these decisions suggest that a CFA claim may be based on a material omission, without more, we disagree. Instead, the omission must be material *and* there must have been special circumstances that triggered a duty to disclose.

25

to the purchaser." The Pharmacy Practice Act imposes upon pharmacists or pharmacies a duty to disclose information in other instances, but does not require disclosure of prescription-drug acquisition cost data.[12] Therefore, the Pharmacies did not violate a statutory duty to disclose.

Moreover, the complaint does not allege facts that would trigger a common law duty to disclose additional facts under any of the special circumstances set forth in *Klein*. The Funds do not allege that they have a confidential or fiduciary relationship with the Pharmacies, and therefore this special circumstance is not applicable. *See Klein*, 293 Minn. at 421, 196 N.W.2d at 622. The Funds argue, however, that the Pharmacies had special knowledge of their prescription-drug acquisition costs, and therefore had a duty to disclose these costs to the Funds. *See id.* at 421, 196 N.W.2d at 622. But the example regarding special knowledge of material facts is a fraud theory that we have rarely addressed. *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989). Indeed, we have only applied the special-knowledge theory in one case, and that case is factually distinguishable. *See Richfield Bank & Trust Co.*, 309 Minn. at 367-69, 244 N.W.2d at 651-52 (concluding that a bank that had actual knowledge that one of its

_____

[12]     Specifically, a pharmacist must notify the purchaser if the pharmacist is dispensing a drug other than the brand name drug prescribed, Minn. Stat. § 151.21, subd. 3; a pharmacy must post a sign that states the pharmacy will substitute a less expensive generic drug product whenever possible, Minn. Stat. § 151.21, subd. 4a; a pharmacist dispensing a brand name drug must disclose to a purchaser whenever there is a less expensive, generically equivalent drug available, Minn. Stat. § 151.21, subd. 6; and a pharmacist must, in certain circumstances, disclose to a patient the patient's co-payment amount and the pharmacy's own customary price or amount the pharmacy will be paid for the drug by a plan, Minn. Stat. § 151.214.

depositors was irretrievably insolvent and thus engaging in fraud by entering into a contract with the plaintiff had a duty to disclose the depositor's insolvency to the plaintiff). Unlike the bank in *Richfield Bank*, there is no allegation that the Pharmacies had actual knowledge of fraudulent conduct.

Finally, we consider the third example in *Klein*, which is that a person who speaks must say enough to prevent the words spoken from misleading the other party. 293 Minn. at 421, 196 N.W.2d at 622. The Funds contend that this example is met here, pointing to the allegations in their amended complaint that the Pharmacies overcharged for generic prescription drugs. Notably, there is no allegation that the Pharmacies made any representation to the Funds other than to state the price of the dispensed generic prescription drug. But merely stating the purchase price of a product does not constitute a violation of the CFA unless the defendant omits material facts that render the words spoken false, deceptive, or misleading. Put differently, merely stating the purchase price is not deceptive and does not trigger a duty to disclose. At bottom, the Funds are attempting to recast their claim under the Pharmacy Practice Act as a CFA claim. But a violation of the Pharmacy Practice Act, without more, does not constitute a violation of the CFA.[13] Instead, a plaintiff must allege facts that constitute a violation of the CFA.

---

[13]   It is true that the Legislature has expressly provided that violations of certain statutes regulating certain industries constitute a violation of the CFA. *See, e.g.*, Minn. Stat. § 325A.09, subd. 7 (2012) ("[A]ny invention developer who is found to have violated sections 325A.01 to 325A.10 shall be deemed in violation of [the CFA], and the provisions of [the Private AG Statute] shall apply."); Minn. Stat. § 325F.63, subd. 3 (2012) (providing that a violation of sections 325F.56 to 325F.66, statutes regulating motor vehicle repair shops, "shall be deemed a violation of [the CFA]"). But there is not

(Footnote continued on next page.)

Specifically, a plaintiff must allege an omission of material fact involving special circumstances that trigger a legal or equitable duty to disclose the omitted facts.

We conclude that the Funds' amended complaint fails to state a claim under the Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1. An actionable omission occurs under the CFA when special circumstances exist that trigger a legal or equitable duty for the defendant to disclose the omitted facts. The Funds' complaint does not allege facts that would trigger a duty to disclose. Consequently, the Funds' complaint fails as a matter of law to state a claim for relief under the CFA, and we therefore reverse the court of appeals and reinstate the decision of the district court dismissing the Funds' complaint.[14]

Affirmed in part, reversed in part.


PAGE, STRAS, and LILLEHAUG, JJ., took no part in the consideration or decision of this case.

---

(Footnote continued from previous page.)
a similar provision providing that a violation of the Pharmacy Practice Act constitutes a violation of the CFA.

[14] In light of our decision in this case, we need not, and do not, address the Pharmacies' additional argument that the Funds failed to plead a causal nexus between the Pharmacies' alleged wrongful conduct and the Funds' alleged injury.