# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-3689

_____

Jennifer Song, on behalf of themselves and all others similarly situated; Scott Wertkin, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellants*

v.

Champion Petfoods USA, Inc.; Champion Petfoods, LP

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 19, 2021
Filed: March 8, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Jennifer Song and Scott Wertkin (Plaintiffs) filed a putative class action, alleging that they were misled by claims made on packages of dog food manufactured

and distributed by Champion Petfoods USA, Inc., and Champion Petfoods, LP (Champion). The district court[1] granted Champion's motion to dismiss. We affirm.

## I. Background

Champion manufactures two brands of dog food, Acana and Orijen. Both brands are distributed throughout the United States and have been manufactured at Champion's production facility in Auburn, Kentucky, since 2016.

Champion launched Acana in the 1990s and advertised it as premium, high-quality dog food. Champion launched Orijen in 2006, with packaging claiming that the dog food was "biologically appropriate." The term was meant to convey that the food contained ingredients that "dogs are evolved to eat," *i.e.*, meat and fish. Champion updated Acana's packaging to include the "biologically appropriate" claim. For example, the packaging for the Acana Lamb & Apple Singles Formula stated:

> BIOLOGICALLY APPROPRIATE™
> Our foods mirror the richness, freshness and variety of meats for which
> DOGS ARE EVOLVED TO EAT.

Similarly, the packaging for the Orijen Regional Red stated:

> BIOLOGICALLY APPROPRIATE™
> NOURISH AS NATURE INTENDED - ORIJEN mirrors the richness,
> freshness and variety of Whole Prey™ meats that dogs are evolved to
> eat.

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

Acana and Orijen packaging also made claims about "fresh regional ingredients." For example, Acana Duck & Pear Singles Formula packaging claimed:

> FRESH REGIONAL INGREDIENTS
> We focus on fresh ingredients from our region that are ranched, farmed or fished by people we know and trust.

Similarly, Orijen Six Fish packaging stated:

> FRESH REGIONAL INGREDIENTS
> GROWN CLOSE TO HOME - We focus on local ingredients that are ethically raised by people we know and trust, and delivered to our kitchens fresh or raw each day.

Both brands' packaging also included statements about the food being natural, such as "nourish as nature intended" and "delivering nutrients naturally."

Champion made more specific claims on the packaging of certain dog food formulas. For example, the Acana Lamb & Apple Singles Formula packaging prominently states that "this 13 lb package of Acana is made with 6 1/2 lbs grass-fed lamb ingredients" and that "half is fresh or raw . . . and half is dried or oils." The Orijen Six Fish packaging claims, in large font, that the 13 lb package "is made with over 11 lb of fresh, raw or dried fish ingredients." It also depicts the types of fish used to make the food, listing below the images the approximate amount of each fish used, including fresh, raw, or dried mackerel, herring, flounder, redfish, monkfish, and silver hale.

Plaintiffs are dog owners who purchased Acana and Orijen dog food. The second amended complaint alleged twelve claims, all aimed at establishing Champion's liability for the following allegedly false, misleading, or deceptive statements: "biologically appropriate," "fresh regional ingredients," "nourish as

nature intended," and "delivering nutrients naturally." Plaintiffs alleged that Champion charges "one of the highest, if not the highest, price premiums in the market for their dog foods" and that they relied on Acana and Orijen packaging when deciding to pay this premium. According to Plaintiffs, the packaging was deceptive because the dog food contained or had a risk of containing Bisphenol A (BPA), heavy metals, and non-fresh, non-regional ingredients. Champion moved to dismiss all claims.

During a hearing on Champion's motion, Plaintiffs articulated their definitions for the alleged misrepresentations. Plaintiffs explained that "'biologically appropriate' means, unless otherwise stated on the packaging, that the dog food is made from all fresh ingredients [and] does not contain any amount of heavy metals or BPA." D. Ct. Order of Dec. 22, 2020, at 11. They defined "fresh regional ingredients" as meaning, unless otherwise specified, that all ingredients used to make Champion dog food are fresh and regional, with "regional" defined as within 100 miles of the Auburn production facility. Plaintiffs claimed that the natural statements were deceptive because the dog food contained or had a risk of containing unnatural ingredients or contaminants, like BPA.

The district court dismissed the second amended complaint based on Plaintiffs' failure to plausibly allege any materially false, misleading, or deceptive representations or omissions of material fact. The district court acknowledged that whether a representation or omission is false, misleading, or deceptive is often a question of fact, but concluded that dismissal is warranted "[w]here allegations of fraud or deception are premised on an implausible interpretation of a packaging statement." D. Ct. Order of Dec. 22, 2020, at 9. The court concluded that it was not plausible that reasonable consumers would interpret "biologically appropriate" to mean that Champion dog food contained no heavy metals. Nor was it plausible that a reasonable consumer interpret "fresh regional ingredients" to mean that the dog food was made only with ingredients that are fresh and regional. The court held that

the phrase "nourish as nature intended" was non-actionable puffery, "too vague to be proved or disproved." Id. at 24. With respect to "delivering nutrients naturally," the court explained that, although Plaintiffs had reasonably defined the phrase as meaning that "the product either is healthy or, at least, would not harm their health," the second amended complaint did not allege that Champion's dog food was not healthy or that it had harmed any dog's health. Plaintiffs' claims related to the presence or risk of BPA contamination were dismissed for lack of standing. The omission-based, breach-of-warranty, and unjust enrichment claims were also dismissed.

## II. Standing To Pursue BPA-Related Claims

Because the second amended complaint did not allege that Plaintiffs had purchased dog food that contained BPA, the district court dismissed the BPA-related claims for lack of standing. D. Ct. Order of Dec. 22, 2020, at 13 (citing Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014) (holding that plaintiffs lacked standing to challenge claim that Hebrew National hot dogs are "100% kosher" because plaintiffs did not allege "that *all* or even *most* Hebrew National products were not kosher, which means the particular packages of processed beef they purchased may have been . . . prepared in accordance with minimum kosher standards")). Plaintiffs did not address standing in their opening brief on appeal, and their reply brief argues only that they have "standing to assert claims related to heavy metals." Reply Br. 21.

Plaintiffs have not challenged the district court's determination that they lacked standing to claim that Champion misrepresented that "the dog food is BPA-free or that Champion manufactures the dog food in a way that eliminates any risk of BPA contamination," D. Ct. Order of Dec. 22, 2020, at 13, and so we will not consider reversing that determination on appeal. See Osher v. City of St. Louis, 903 F.3d 698, 704 (8th Cir. 2018) (contention waived when not meaningfully argued in plaintiff's

opening brief); see also Renfro v. Champion Petfoods USA, Inc., No. 20-1274, 2022 WL 453366, at *6 (10th Cir. Feb. 15, 2022) ("Plaintiffs could not have suffered any consumer protection injury if they had not purchased dog food containing the objectionable ingredients."). Accordingly, we do not reach the merits of their arguments that the terms "biologically appropriate," "fresh regional ingredients," "delivering nutrients naturally," and "nourish as nature intended" could deceive reasonable consumers because of the presence or risk of BPA in Champion's dog food.

## III. Dismissal on the Merits

We review *de novo* the district court's grant of Champion's motion to dismiss, accepting the second amended complaint's well-pleaded allegations as true and drawing all reasonable inferences in favor of Plaintiffs. See Schriener v. Quicken Loans, Inc., 774 F.3d 442, 444 (8th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The parties agree that Minnesota law applies.

The second amended complaint alleged violations of five Minnesota consumer-protection statutes, as well as common-law claims for fraudulent misrepresentation and fraudulent concealment.[2] To prove any of the statutory or common-law fraud claims, Plaintiffs were required to plausibly allege that because of Champion's

---

[2]Plaintiffs alleged that Champion violated the following statutes: Minnesota Commercial Feed Law, Minn. Stat. §§ 25.31–.43; Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13; Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44; Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67; and Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69.

affirmative misrepresentations or of Champion's material omissions, Acana or Orijen packaging could deceive a reasonable consumer.[3] "It's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it—and that dismissal is warranted in those circumstances." Bell, 982 F.3d at 493 (J. Kanne, concurring).

Plaintiffs argue that they plausibly alleged that "biologically appropriate" could deceive a reasonable consumer, claiming that the phrase indicates a complete absence of heavy metals like arsenic, cadmium, mercury, and lead. Plaintiffs did not allege in their second amended complaint, and do not argue here, that the level of heavy metals present in Champion's dog food is harmful to dogs. Nor do they dispute that heavy metals occur naturally in meat and fish. We thus agree with the district court that "[i]t is simply not plausible to suggest that a reasonable consumer would read the phrase 'biologically appropriate' on a dog-food package—a package that makes clear that the dog food contains meat and fish—and understand Champion to be representing that it eliminated all traces of heavy metals from the dog food." D. Ct. Order of Dec. 22, 2020, at 12.[4]

---

[3]See Graphic Commc'ns Loc. 1B Health & Welfare Fund "A" v. CVS Caremark Corp., 850 N.W.2d 682, 695 (Minn. 2014) (Minnesota Prevention of Consumer Fraud Act applies to conduct "that tend to deceive or mislead a person," including affirmative misrepresentations or material omissions); M.H. v. Caritas Family Servs., 488 N.W.2d 282, 289 (Minn. 1992) ("A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading."); see also Bell v. Publix Super Markets, Inc., 982 F.3d 468, 474 (7th Cir. 2020) (Minnesota's consumer-protection statutes generally "require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers" (citation omitted)).

[4]See Renfro, 2022 WL 453366, at *7 ("The only conclusion that a reasonable consumer could draw from a package that claimed the dog food was 'Biologically Appropriate' is that it was fit for dogs to consume."); Weaver v. Champion Petfoods

Plaintiffs next argue that they plausibly alleged that a reasonable consumer could be deceived by Champion's representations that its food is made with "fresh regional ingredients." They contend that the district incorrectly characterized their position as being that a reasonable consumer would believe that "all ingredients in the Dog Food are Fresh and Regional unless the packaging explicitly states otherwise." Appellants' Br. 23. The record belies this contention, however.

During the hearing on the motion to dismiss, the district court asked how a reasonable consumer would interpret the word "fresh," because if the reasonable consumer believed "fresh" meant something less than 100% fresh ingredients, "the reasonable consumer would, the logical implication, expect there [to be] some non-fresh ingredients." Hr'g Tr. 16. Plaintiffs' counsel eventually articulated the position that the term conveyed "that everything is fresh, . . . unless it is specifically identified that it's not." Id. at 22. When asked whether a reasonable consumer would believe that the word "regional" meant that "all the ingredients of the package are regional," counsel responded, "Unless otherwise specified. I think that's the same as 'fresh,' and I think that's a fair reading of it." Id. at 37.

We thus consider whether the terms "fresh" and "regional" convey that Champion dog food is made from only fresh, regional ingredients, unless otherwise specified. "Several district courts have held that references to ingredients used do not

USA Inc., No. 18-CV-1996, 2019 WL 2774139, at *3 (E.D. Wis. July 1, 2019) (concluding on motion to dismiss "that the mere presence of heavy metals" did not render packaging claims false or misleading); Simpson v. Champion Petfoods USA, Inc., 397 F. Supp. 3d 952, 972 (E.D. Ky. 2019) (dismissing omission-based claim because "[t]he fact that heavy metals naturally exist in organic proteins and in high concentrations in fish belies Plaintiffs' logic that Champion had a duty to disclose this information" (internal citation omitted))

imply that ingredient is used exclusively." Weaver v. Champion Petfoods USA Inc., 3 F.4th 927, 937 (7th Cir. 2021).[5] As the district court here explained:

> Just as a statement that mashed potatoes are made with "real butter" does not imply that the *only* fat used is real butter, and just as a statement that graham crackers are made with "real honey" does not imply that the *only* sweetener used is real honey, so too the statement that a bag of dog food contains "fresh regional ingredients" does not imply that it is composed *exclusively* of ingredients that are fresh and regional.

D. Ct. Order of Dec. 22, 2020, at 18–19 (footnote omitted).

No reasonable consumer could believe that the "fresh regional ingredients" statements on Champion's packaging meant that all of the dog-food ingredients were fresh and regional, unless otherwise specified.[6] The packaging prominently indicates

---

[5]See Kennedy v. Mondelçz Glob. LLC, No. 19-CV-302, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) ("made with real honey" not misleading when graham crackers were made with honey, as well as additional sweeteners and additives); Sarr v. BEF Foods, Inc., No. 18-cv-6409, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) ("real butter" not misleading when instant mashed potatoes were made with real butter, as well as other fats); Henderson v. Gruma Corp., No. CV 10-04173, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("With Garden Vegetables" not misleading because "the labeling statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product").

[6]See Weaver v. Champion Petfoods USA, Inc., 471 F. Supp. 3d 876, 884 (E.D. Wis. 2020) ("[W]hen the dog food packaging is viewed in full, it is clear that some ingredients are 'fresh, raw, or dehydrated' and that some ingredients are frozen and/or freeze-dried, and that at least several pounds of both types of dog food are not fresh ingredients."); id. ("It also seems obvious that the salt-water fish included in the Six Fish dog food would not be regional to Kentucky, but rather to the Atlantic Ocean as advertised on the packaging.").

that Champion uses non-fresh and non-regional ingredients, including dried ingredients and oils or saltwater fish such as mackerel and flounder.[7] Moreover, the second amended complaint alleged that Champion does, in fact, use some fresh and regional ingredients in its dog food. Thus, "Champion's representations that its food is made with fresh regional ingredients are not clearly misleading—its food does, in fact, contain some ingredients that are fresh and sourced regionally." Weaver, 3 F.4th at 937.

Plaintiffs argue that the "fresh regional ingredients" statements are rendered misleading by Champion's failure to disclose that it uses frozen ingredients, regrinds, refreshed ingredients, and ingredients that are past their expiration date, as well as ingredients sourced from outside Kentucky and internationally. But because Champion packaging does not represent that all of the ingredients are fresh and regional, the reasonable consumer would know that some of the ingredients are neither fresh nor regional. It is implausible to suggest that the reasonable consumer

---

[7]Consumers are not expected to examine the fine-print ingredient list located on the back of a label to correct a prominent front-label misrepresentation. See, e.g., Bell, 982 F.3d at 473–74 (plaintiffs plausibly alleged that the prominent front-label claim of "100% Grated Parmesan Cheese" could deceive a reasonable consumer, despite fine-print, back-label ingredient list indicating that the container included cellulose powder and potassium sorbate); Dumont v. Reily Foods Co., 934 F.3d 35, 40 (1st Cir. 2019) (plaintiff plausibly alleged that the prominent front-label claim of "Hazelnut Crème" could deceive a reasonable consumer, despite fine-print back-label ingredient list disclosing that the package contained no hazelnut); Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018) (plaintiffs plausibly alleged that prominent front-label claims of "Whole Grain" or "Made With Whole Grain" could deceive a reasonable consumer, despite side-panel ingredient list that discloses "enriched white flour" as the first and thus predominent ingredient). Despite Plaintiffs' argument to the contrary, the district court here did not expect consumers to conduct such an examination, but instead concluded that "fresh regional ingredients" did not represent that all ingredients were fresh and regional, particularly when the packaging prominently advertised the dog food contained non-fresh and non-regional ingredients.

would interpret a representation that the dog food contains some fresh, regional ingredients as a representation about which non-fresh or non-regional ingredients the dog food does or does not contain. See Renfro, 2022 WL 453366, at *6 ("No reasonable consumer would find Champion's packaging misleading merely because the ingredients contained some percentage of non-fresh or non-regional ingredients when, as here, the packaging disclosed that very fact.").

> Plaintiffs cannot state a claim under the MPCFA by constructing a hypothetical 'reasonable consumer' with highly artificial, detailed expectations about a products—in this case, expectations about the use of 'regrinds' and 'refreshed' ingredients (terms that are unlikely to be familiar to the typical consumer)—and then allege that the representations about the product were fraudulent because the product did not meet those expectations.

D. Ct. Order of Dec. 22, 2020, at 21.

We conclude that the district court properly dismissed Plaintiffs' omission-based claims because "none of Champion's packaging statements are deceptive or misleading, and thus none require corrective disclosures." D. Ct. Order of Dec. 22, 2020, at 28. We reject Plaintiffs' argument that Champion was required to disclose further information because of its special knowledge of material facts to which Plaintiffs did not have access. This duty to disclose based on special knowledge arises only in limited circumstances, which are not present in this case. See Graphic Commc'ns, 850 N.W.2d at 698 ("[W]e have only applied the special-knowledge theory in one case, and that case is factually distinguishable."). Finally, Plaintiffs' breach of warranty and unjust enrichment claims are premised on the same allegations of deception that are insufficient to support the fraud claims, and thus they fail for the same reasons.

The judgment is affirmed.

_____